```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/31/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                                                         :
SHAUNA MCKENZIE-MORRIS, *et. al.*,      :
                                                                                        :
                                         Plaintiffs,  :      1:22-cv-1138-GHW
              -against-                       :
                                                                             :      <u>MEMORANDUM OPINION &</u>
V.P. RECORDS RETAIL OUTLET, INC., *et al.*, :         <u>ORDER</u>
                                                                                :
                                                         Defendants.  :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

       This case concerns copyright infringement allegations by a recording artist, brought on her own behalf and on the behalf of a business that she co-owns, against several defendants. But this order does not address the substance of Plaintiffs' claims. Instead, it resolves something of a detour: Whether Plaintiffs' request for judicial notice of certain documents, which this Court denied in August 2022, was sanctionable. Because Plaintiffs' motion had no chance of success when filed, and because the Court repeatedly explained to Plaintiff's counsel why that was so in advance of filing, Plaintiffs' judicial-notice motion violated Rule 11. Accordingly, Defendants' motion for sanctions is GRANTED.

## II.    BACKGROUND[1]

       In April 2022, Plaintiffs filed their amended complaint seeking injunctive and declaratory relief for Defendants' alleged infringement of Plaintiffs' copyrights in Plaintiff Shauna McKenzie-Morris's "written music, her recording services and her image, name and likeness on and in

---

[1] As this order resolves only Defendants' sanctions motion, this section discusses only the factual and procedural background most relevant to that motion.

connection with her musical compositions, albums, and sound recordings." Dkt. No. 23 ¶ 3, *see id.* ¶ 6. On May 24, 2022, Defendants moved to dismiss that complaint. Dkt. No. 26.

On July 8, 2022, after the motion to dismiss was fully briefed, Plaintiffs filed a letter requesting that the Court take judicial notice of certain facts in a June 27, 2022 email exchange between music producer Kemar McGregor and John McQueeney, Sr., the Senior Director of Business Affairs at Defendant V.P. Records. Dkt. No. 40 at 1–2. While Plaintiffs averred that they did not ask the Court to take judicial notice of that exchange "for the truth of the matters asserted" in the emails, they simultaneously stated that the "request for judicial notice [was] to establish that there is a legitimate question of fact related to Plaintiffs' claims and ownership rights." *Id.* at 2.

On July 12, 2022, the Court held a conference concerning Plaintiffs' judicial-notice request. Dkt. No. 46. At that conference, Plaintiffs' counsel Celeste N. McCaw stated that the request was to "judicially notice the existence of the disputed allegations" concerning Plaintiffs' alleged ownership rights, and that such a "fact is capable of being verified under . . . [F]ederal [R]ule of [E]vidence 201." *Id.* at 5:20–23. The Court expressed repeated skepticism that Ms. McCaw could submit a brief making that argument consistent with her obligations under Federal Rule of Civil Procedure 11, which requires counsel to have a "nonfrivolous basis for the application." *Id.* at 6:24–7:4; *see also id.* at 7:18–20. The Court asked whether Ms. McCaw was asking the Court to consider the emails, which had been filed in another court, for "the fact that they are filed" or for their "content"; in response, Ms. McCaw stated that the request was to establish that "there is a dispute between Mr. McGregor and VP records that relate to [P]laintiffs' claims in this matter." *Id.* at 7:21–8:1. The Court set a briefing schedule for Plaintiffs' proposed judicial-notice motion, but not before again stating its concern to Ms. McCaw "that the arguments that you're about to put your signature behind may not rest on a really fully informed view of what the rules are about," and again reminding counsel of her "obligations as an officer of the court and also under [R]ule 11 to make

2

sure that arguments presented are not frivolous." *Id.* at 10:24–11:10; *see also id.* at 14:4–5 (again asking Ms. McCaw to "spend some time considering the legal basis for the motion and the arguments presented" before filing her anticipated motion).

Ten days later, Plaintiffs filed their motion for judicial notice. Dkt. No. 45. That motion requested that, in evaluating Defendants' motion to dismiss, the Court take judicial notice of four court documents—three complaints and one letter—that had been filed in four different cases. *Id.* at 1–2. Specifically, the motion requested that the Court take judicial notice of: (1) a letter to the court in *V.P. Music Group, Inc. v. McGregor*, No. 11-cv-2619 (E.D.N.Y. May 2, 2016), purportedly "notifying the Court that the language in [a] settlement agreement was incorrect by incorporating language that would not only transfer Mr. McGregor's interest to VP Records but also the interests of third parties"; (2) an amended complaint in *MV Music. v. VP Records*, No. 20-cv-5524 (E.D.N.Y. Dec. 9, 2021), purportedly claiming that "[t]he established pattern and practice of VP [Records Retail Outlet, Inc. and V.P. Music Group Inc.] has been that they acquire the recordings from Jamaican Producers, exploit them in the US market without getting the proper or full clearance for the vocal performances given on the recordings"; (3) a complaint in *V.P. Music Group, Inc. v. Tad's Record*, No. 08-cv-10431 (S.D.N.Y. Dec. 2, 2008), purportedly stating that "[o]n or about May 1, 2007 VP Music entered into an exclusive recording artist agreement with the recording artist Shauna McKenzie, professionally known as 'Etana' (the 'Etana Agreement'), which agreement granted VP Music exclusive rights in and to Etana's recording services, and the ownership of all rights to all sound recordings made during the term of the agreement"; and (4) a complaint filed in *McGregor v. VP Records*, No. 17-cv-3917 (S.D. Fla. Jan. 30, 2017), purportedly stating that VP Records "wrongfully amended filed copyrights to the sound recording, masters, lyrics and productions as 'works for hire' wholly owned by their companies, STB Music Inc and VP Records." Dkt. No. 45 at 1–2 (internal citations omitted).

In their motion, as in their initial letter concerning judicial notice, Plaintiffs again stated that they understood that these documents could be considered "not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." *Id.* at 3 (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). But—again, as in their initial letter—Plaintiffs also stated that the purpose of their request for judicial notice was to "establish that there is a legitimate question of fact related to Plaintiffs' claims and ownership." *Id.* at 4.

On August 19, 2022, Defendants opposed Plaintiffs' motion. Dkt. No. 48. They argued that the only way that the court-filed documents could "establish that there [was] a legitimate question of fact related to Plaintiffs' claims and ownership rights" was "if the Court accept[ed] the unproven assertions they contain as true." *Id.* at 3 (quoting Dkt. No. 45 at 4). Defendants also noted that while Plaintiffs included quotes from the documents that they requested the Court to take notice of, Plaintiffs did not explain, for each quoted statement, the purpose for which they asked the Court to take judicial notice. *Id.* at 3–4. And Defendants argued that binding authority plainly foreclosed Plaintiffs' request for judicial notice, which in practice asked the Court to judicially notice the documents for the truth of the matters asserted in them. *Id.* at 5–7. Plaintiffs replied on August 26, 2022, arguing that they asked the Court to take notice of certain documents not "for the truth of their contents, but rather to demonstrate what the documents stated." Dkt. No. 50 at 1 (internal quotation omitted).

On August 31, 2022, the Court held a conference to resolve Plaintiffs' motion for judicial notice. Dkt. No. 61 (conference transcript); *see* Dkt. No. 51 (related order). To start that conference, the Court engaged in colloquies with counsel for both sides. The Court noted, and Ms. McCaw acknowledged, that of the four documents Plaintiffs sought to have the Court judicially notice, only one—the complaint in *V.P. Music Group*, No. 08-cv-10431—actually contained a

4

statement by Defendants in this case. Dkt. No. 61 at 7:6–7:13. After Ms. McCaw clarified that she was asking the Court to consider all four documents because they "contradict statements made by the defendant[s]" here, *id.* at 8:5, the Court questioned Ms. McCaw repeatedly on how it could do so "[w]ithout accepting the truth of the matter[s] asserted in those documents," *id.* at 9:3–4. *See also id.* at 10:9–13, 11:5–7. The Court also noted that on a motion to dismiss, it does not make credibility determinations and evaluates agreements based solely on their terms (rather than through statements made about them). *Id.* at 12:13–13:3. Given that, the Court questioned Ms. McCaw on how the documents that Plaintiffs sought to have the Court take judicial notice of could be "relevant at all to the Court's assessment of the pending motion to dismiss." *Id.* at 14:3–9.

After providing Ms. McCaw several chances to respond, *see id.* at 14:10–15:4, 15:18–16:3, the Court denied Plaintiffs' motion for judicial notice in an oral opinion. It explained that despite Plaintiffs' statements to the contrary in their filings, they were "actually asking [the Court] to take judicial notice of the facts asserted in the [court-filed] documents, not merely to take notice of the fact that the statements were made." *Id.* at 17:23–18:7. "[T]he only way that [the Court] could consider that the [D]efendant[s] contradicted [themselves], based on the three documents which they did not author," the Court explained, would be if the Court "accepted for the truth the descriptions of their conduct contained in the other documents." *Id.* at 18:11–15. So "Plaintiffs' argument that they are requesting that [the Court] consider these documents merely for the fact that the statements were made is not plausible." *Id.* at 18:19–21. And the same was true for the *V.P. Music* complaint—Plaintiffs' request that the Court take notice of a statement in that complaint concerning the scope of an agreement between the parties here asked the Court "to consider the truth of the fact asserted." *Id.* at 21:4–12. The Court also made "a subsidiary holding" that even if the Court *could* judicially notice the purported contradiction between statements made in other

5

litigation documents and those made in this case, it was likely not relevant to the Court's assessment of the motion to dismiss here. *See id.* at 21:13–22:17.

On September 15, 2022, Defendants filed a motion for Rule 11 sanctions against Plaintiffs based upon the motion for judicial notice. Dkt. Nos. 54 (motion), 55 (memorandum of law in support, or "Defs' Mem.").[2] Defendants argued that Plaintiffs' request for judicial notice was frivolous and thus violated Rule 11. Defs' Mem. at 7–9. Alternatively, Defendants claimed that Plaintiffs' request was sanctionable because it sought judicial notice of irrelevant documents. *Id.* at 10–11. The sanctions motion is now fully briefed. Dkt. Nos. 63 (Plaintiffs' opposition, or "Pls' Opp."), 64 (Defendants' reply, or "Reply").

### III. LEGAL STANDARDS

#### a. Federal Rule of Evidence 201

The Federal Rules of Evidence permit courts to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under that rule, a "Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss without converting that motion into a motion for summary judgment." *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 313 n.7 (S.D.N.Y. 2015) (citing *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000)). But a "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns*, 458 F.3d at 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

---

[2] Defendants complied with Rule 11's safe-harbor provision by serving Plaintiffs with a copy of their sanctions request on August 19, 2022, twenty-seven days before filing of the sanctions motion with the Court. Dkt. No. 56 ¶¶ 2–3 & Ex. A; *see* Fed. R. Civ. P. 11(c)(2) (allowing a party to avoid sanctions if it withdraws the challenged pleading within twenty-one days of a sanctions motion's service).

6

b. **Federal Rule of Civil Procedure 11**

Federal Rule of Civil Procedure 11(b) requires that an attorney filing a motion certify, "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). To establish a violation of Rule 11(b)(2), it must be "patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (internal citation omitted); *see also Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000) ("[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness.").

Although, as a general matter, Rule 11 does not impose a continuing obligation on the presenter to update, correct or withdraw any pleading, written motion or other paper which, when presented, satisfies the requirements of the Rule, Rule 11 is nevertheless implicated "where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that [the claim is] groundless." *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 597 (S.D.N.Y. 2013) (internal citation and quotations omitted); *see also Galin v. Hamada*, 283 F. Supp. 3d 189, 203 (S.D.N.Y. 2017) ("Thus, the Court concludes that, once discovery closed, Galin and his counsel had an obligation under Rule 11 to withdraw the [c]omplaint because they knew—by that point if not

earlier—that their allegations on the central (and dispositive) issue in the case were utterly lacking in support.") (internal citation omitted).

Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy. *E. Gluck Corp.*, 252 F.R.D. at 179. However, if "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "[I]f the district court concludes that the assertion of a given claim violates Rule 11 . . . the decision whether or not to impose sanctions is a matter for the court's discretion." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-cv-885, 2019 WL 422613, at *2 (S.D.N.Y. Feb. 4, 2019) (citing *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)). And if a court determines that sanctions are warranted, the "decision of what type of sanction is appropriate in a given case" is also "left to the sound discretion of the district court." *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706–07 (S.D.N.Y. 2017) (collecting cases).

## IV. DISCUSSION

### a. Plaintiffs' Frivolous Motion Violated Rule 11

Because Plaintiffs' request for judicial notice was frivolous, sanctions are warranted under Rule 11. It was—or should have been—"patently clear" to Plaintiffs' counsel that the judicial-notice motion had "absolutely no chance of success under . . . existing precedents." *E. Gluck Corp.*, 252 F.R.D. at 179 (internal citation omitted).[3] The crux of Plaintiffs' motion was that statements in certain documents filed in other cases could be judicially noticed "to establish that there is a legitimate question of fact related to Plaintiffs' claims and ownership rights" in this case. Dkt. No. 40 at 2. But as both the Court and Defendants explained repeatedly, that supposed "question of

---

[3] Plaintiffs made no argument for any extension, modification, or reversal of the law of judicial notice as it currently stands, and thus cannot seek refuge in that portion of Rule 11. *See* Fed. R. Civ. P. 11(b)(2).

8

fact" cannot be established unless the statements made in the other documents were considered for their truth in violation of Federal Rule of Evidence 201(b). *See Glob. Network Commc'ns*, 458 F.3d at 157 (noting that under Rule 201(b), a "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings" (quoting *Int'l Star*, 146 F.3d at 70)). To put that conclusion differently, if the statements in the other documents are *not* true, then they do not establish a question of fact related to the claims and ownership rights here, because they are inaccurate. So to establish that the question of fact that Plaintiffs identify as the purpose of judicial notice exists, the Court would have to consider the statements in the documents filed in other courts for their truth. But it is blackletter law that documents filed in another court may not be considered for that purpose. *See, e.g., Glob. Network Commc'ns*, 458 F.3d at 157; *Hartmann v. Apple, Inc.*, 2021 WL 4267820, at *4 (S.D.N.Y. Sept. 20, 2021) (Woods, J.) (declining to take notice of allegations of ownership in court-filed documents in another case because judicial notice cannot be taken of filings in other courts for their truth).

Given the logical endpoint of their request for judicial notice, Plaintiffs' response that they "did not seek to have the Court take judicial notice of the truth of the contents of the court-filed documents" rings hollow. Pls' Opp. at 7. It is true that, several times, Plaintiffs stated that they were not asking the Court to consider the court-filed documents for their truth. *See* Dkt. No. 40 at 2; Dkt. No. 45 at 3. But Plaintiffs made those conclusory statements while simultaneously asking the Court to consider the court-filed documents to establish that Defendants' representations in this case were inaccurate—which, as just noted, would require the Court to consider the court-filed

9

documents for their truth. *See, e.g.*, Dkt. No. 40 at 2. Stating that a motion complies with relevant law does not make it so.[4]

The Court's repeated warnings to Plaintiffs' counsel concerning the judicial-notice motion further justifies the imposition of sanctions. Many courts in this district have seen fit to impose sanctions where the court warned the party that a certain filing would likely violate Rule 11, but the party proceeded to file the document anyway. *See, e.g.*, *Weinraub v. Glen Rauch Secs., Inc.*, 419 F. Supp. 2d 507, 517 (S.D.N.Y. 2005) (finding that the court had "no choice but to impose Rule 11 sanctions" where the party "fail[ed] to heed warnings by the Court and his opponents"); *Polar Int'l Brokerage Corp. v. Reeve*, 196 F.R.D. 13, 17 (S.D.N.Y. 2000) (imposing sanctions because of plaintiffs' inclusion of flawed allegations "[d]espite th[e] Court's warning and clear legal precedent" foreclosing their argument). Here, the Court repeatedly and extensively warned Plaintiffs that their judicial-notice motion was likely to violate Rule 11 and explained why that was the case. *See, e.g.*, Dkt. No. 46 at 6:24–7:4 (expressing skepticism that the motion could be filed consistent with Rule 11); *id.* at 7:18–20 (same); *id.* at 10:24–11:10 (same); *id.* at 14:4–5 (asking Ms. McCaw to "spend some time considering the legal basis for the motion and the arguments presented" before filing her anticipated motion); Dkt. No. 61 at 9:3–4 (asking Ms. McCaw how it could consider the court-filed documents for Plaintiffs' proffered purpose "[w]ithout accepting the truth of the matter[s] asserted in those documents"); *id.* at 10:9–13 (same); *id.* at 11:5–7 (same). Plaintiffs chose to file their motion nonetheless. It is no answer to state, as Plaintiffs do now, that they "did in fact take heed to the

---

[4] While they never say as much, Plaintiffs could also have requested judicial notice of the court-filed documents for the purpose of impeaching Defendants' credibility. The Court explored this possibility with Plaintiffs' counsel at the August 31, 2022 hearing, explaining that at the motion-to-dismiss stage, the Court does not make credibility determinations. Dkt. No. 61 at 12:13–18. And it asked, given that "the Court will evaluate the text of the agreements based on their text, not based on the descriptions of the text by parties, and where the Court accepts largely the facts asserted by the complaint as true," how the court-filed documents could be "relevant at all to the Court's assessment of the pending motion to dismiss." *Id.* at 14:3–9. The response from Plaintiffs' counsel failed to grapple with the fact that, at this stage of the proceedings, Plaintiffs' allegations in the complaint are taken as true—and so whatever the court-filed documents said about the scope of the agreements at issue here, they could not affect the Court's analysis of the motion to dismiss. *See id.* at 14:10–15:4, 15:18–16:3.

Court's caution of Rule 11 sanctions" by requesting judicial notice of court filings, rather than emails. Dkt. No. 63 at 5–6. The Court's warnings at both the July 12, 2022 and August 31, 2022 conferences made clear that the principal problem with Plaintiffs' judicial-notice motion was that it was asking the Court to consider statements in other documents—whether in emails or court filings—for their truth. *See, e.g.*, Dkt. No. 46 at 7:21–23; Dkt. No. 61 at 9:3–6. That Plaintiffs' request ultimately focused on court-filed documents did not meaningfully address this issue. The Court therefore finds that Plaintiffs' judicial-notice motion was frivolous, and that sanctions under Rule 11 are warranted.[5]

### b. Attorneys' Fees are Warranted

Having determined that sanctions are warranted under Rule 11, the Court additionally concludes that a payment of attorneys' fees is justified in this case. When a Court determines that sanctions are warranted, the "decision of what type of sanction is appropriate in a given case is left to the sound discretion of the district court." *Tchatat*, 249 F. Supp. 3d at 706–07 (S.D.N.Y. 2017). "[T]he underlying purpose of sanctions [is] to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations . . . ." *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986); *see also* Fed. R. Civ. P. 11(c)(4). Here, neither the threat of sanctions from Defendants not the Court's repeated warnings were sufficient to prevent Plaintiffs from filing their frivolous motion. The Court has no choice but to conclude that monetary payment in some form is necessary to effectuate Rule 11's "central purpose": "to deter baseless filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). And payment to Defendants is appropriate because they bore the cost both of opposing Plaintiffs' motion and filing this motion for

---

[5] Defendants argue that Plaintiffs' motion separately violated Rule 11 because, had it sought judicial notice of the court-filed documents merely to establish their existence—a permissible purpose under Federal Rule of Evidence 201(b)—that request would have been irrelevant. Defs' Mem. at 10–11. Because the Court does not understand Plaintiffs to have in fact requested judicial notice of the court-filed documents for this purpose, it does not reach this additional rationale for Rule 11 sanctions.

sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991) (noting that awards of attorneys' fees can be justified when necessary to compensate attorneys for the expenses associated with the "expense and waste of financial resources" that can accrue from litigation misconduct); *see also* Dkt. No. 46 at 13:25–14:1 (the Court warning Plaintiffs that the "time and expense involved in litigating [a frivolous motion] are among the consequences that can be sought in sanctions").

In order to properly assess what fees may be warranted, Defendants are instructed to submit contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done" opposing Plaintiffs' judicial-notice motion and litigating this sanctions motion. *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (internal citation omitted); *see also* Fed. R. Civ. P. 11(c)(2) (noting that "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred" in bringing a sanctions motion). These records must be submitted no later than fourteen days from the date of this order. Defendants are reminded that in seeking attorneys' fees, they bear the burden of "documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Defendants are additionally cautioned that the Second Circuit has directed courts in this district not to impose attorneys' fees in excess of "what a reasonable, paying client would be willing to pay" attorneys for work on a case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008); *see also Hensley*, 461 U.S. at 434 (1983) (noting that counsel must exclude from attorneys' fees calculations "hours that are excessive, redundant, or otherwise unnecessary"). And the Court retains discretion, in reviewing Defendants' submission, to ultimately impose a sanction "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Tchatat*, 249 F. Supp. 3d at 706–07 (S.D.N.Y. 2017) (noting the broad discretion held by district courts to impose appropriate sanctions).

### V. CONCLUSION

For the foregoing reasons, Defendants' motion for sanctions is GRANTED. Defendants are directed to submit the documentation described in the final paragraph of Part IV(b) of this order no later than fourteen days from the date of this order.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 54.

SO ORDERED.

Dated: October 31, 2022

                                                                         GREGORY H. WOODS
                                                                         United States District Judge