```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/10/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                   :
SHAUNA MCKENZIE-MORRIS,                 :
                                                   :
                                            Plaintiff,     :           1:22-cv-1138-GHW
                          -against-                                                   :
                                                      :                    <u>ORDER</u>
V.P. RECORDS RETAIL OUTLET, INC., *et al.*, :
                                                                       :
                                                             Defendants.    :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

This case concerns copyright infringement claims brought by recording artist Shauna McKenzie-Morris. In a previous order, *see* Dkt. No. 66 (the "Sanctions Order"), the Court determined that a request for judicial notice of certain documents made by Plaintiff's former counsel was sanctionable under Federal Rule of Civil Procedure 11. That decision left open the determination of the amount of the appropriate sanction. For the reasons explained below, this Court will impose sanctions on Ms. McKenzie-Morris's former counsel in the amount of $24,540.00.

## II.    BACKGROUND

The Court presumes the reader's familiarity with this case. Readers seeking a more comprehensive description of the factual background of the case can consult the Court's order resolving Defendants' first motion to dismiss. Dkt. No. 75. And the Court's order granting Defendants' Rule 11 motion explains why an award of sanctions is appropriate here. Dkt. No. 66. What follows are only the facts and procedural history that are particularly relevant to this opinion.

Before Plaintiff's then-counsel Celeste McCaw filed a motion for judicial notice on July 22, 2022, *see* Dkt. No. 45, the Court expressed its skepticism that such a motion would be consistent with her obligations under Rule 11. *See* Dkt. No. 46 at 6:24–7:4; *see also id.* at 7:18–20. After the

1

Court denied the motion, Dkt. No. 61, Defendants filed a motion for Rule 11 sanctions against Ms. McCaw on September 15, 2022. *See* Dkt. No. 55. The Court granted the motion on October 31, 2022, explaining that the request for judicial notice was frivolous and, therefore, violated Rule 11. Dkt. No. 66 at 8–11. The Court concluded that the payment of Defendants' attorneys' fees was justified in order to defray the costs Defendants had incurred opposing the motion and to "deter baseless filings." *Id.* at 11–12 (quoting *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990)). In order to determine the appropriate amount of the award, the Court directed Defendants to submit contemporaneous time records that showed "for each attorney, the date, the hours expended, and the nature of the work done" opposing Plaintiff's judicial-notice motion and litigating the sanctions motion. *Id.* at 12 (quoting *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014)). They have done so, *see* Dkt. No. 67, and the request is now fully briefed. *See* Dkt. No. 70 (opposition); Dkt. Nos. 72–73 (reply and additional declaration).

### III. LEGAL STANDARD

Under Rule 11, courts may impose monetary sanctions in the form of reasonable "attorneys' fees incurred in [a] defense" against a baseless filing. *Cooter*, 496 U.S. at 406–07; *see also* Fed. R. Civ. P. 11(c)(4) (permitting, if "on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees"). District courts have "considerable discretion" in determining what constitutes a reasonable award of attorneys' fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). Even so, the Second Circuit has directed that district "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). Those hourly rates "are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

In determining a reasonable hourly fee, the Second Circuit has also instructed district courts to consider "all of the case-specific variables." *Arbor Hill*, 522 F.3d at 190. The touchstone inquiry is "what a reasonable, paying client would be willing to pay." *Id.* at 184; *see id.* at 191 ("By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services."). The court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and "should also consider that [a client] might be able to negotiate with his or her attorneys." *Id.* at 190. A district court may additionally factor into its determination "the difficulty of the questions involved[,] the skill required to handle the problem[,] the time and labor required[,] the lawyer's experience, ability and reputation[,] the customary fee charged by the Bar for similar services[,] and the amount involved." *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, No. 09-cv-8665, 2010 WL 5538552, at *2 (S.D.N.Y. Dec. 6, 2010) (alterations in original) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)), *report and recommendation adopted*, No. 09-cv-8665, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011).

The applicant for an award of fees bears "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "A party seeking an award of attorneys' fees must support its request with contemporaneous time records that show for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "The applicant should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. "The critical inquiry is whether, at the time the work was

3

performed, a reasonable attorney would have engaged in similar time expenditures." *Flores v. J&B Club House Tavern, Inc.*, No. 10-cv-4332, 2012 WL 4891888, at *5 (S.D.N.Y. Oct. 16, 2012) (internal citation omitted).

"A district court should reduce the number of hours included in the fee calculation if the claimed time is 'excessive, redundant, or otherwise unnecessary.'" *Luessenhop v. Clinton Cnty.*, 324 F. App'x 125, 126-27 (2d Cir. 2009) (summary order) (quoting *Hensley*, 461 U.S. at 434). Furthermore, the Court retains discretion, in reviewing Defendants' submission, to ultimately impose a sanction "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706–07 (S.D.N.Y. 2017) (explaining that "decision of what type of sanction is appropriate in a given case" is "left to the sound discretion of a district court"). In the event a district court reduces the number of hours included in the calculation of fees, it "must ordinarily state its reasons for excluding those hours 'as specifically as possible' in order to permit meaningful appellate review." *Gierlinger*, 160 F.3d at 876 (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)). Finally, a court may order payment not only of attorneys' fees incurred in defending against sanctionable conduct but also so-called "fees on fees" in the form of "other expenses directly resulting from the [Rule 11] violation." Fed. R. Civ. P. 11(c)(4).

### IV. DISCUSSION

Defendants assert that they are entitled to an award of $40,900. They arrive at that total by summing the following amounts: (1) $32,090.00 for attorneys' fees incurred in connection with opposing Plaintiff's motion for judicial notice and preparing Defendants' motion for sanctions under Federal Rule of Civil Procedure 11, *see* Dkt. No. 67 ¶ 2; (2) $2,170.00 in attorneys' fees incurred in connection with Defendant's initial submissions in support of fees, *see id.* n.1; and (3)

$6,640 in attorneys' fees incurred in connection with the preparation of Defendant's reply in support of its application for attorneys' fees. Dkt. No. 72 ¶ 3.

Defense counsel's hourly rates were reasonable. However, the Court finds that several reductions to the fees sought here are warranted. Given the relatively straightforward nature of responding to the motion, Defendants expended excessive hours in litigating this motion and could have charged fewer hours to partner Alan R. Friedman. As a result, a reduction in the fees sought is appropriate, and the Court will award Defendants a total of $24,540.00 in attorneys' fees.

### A. Reasonable Rates

The Court finds that the hourly rates charged by Defendants' attorneys—Alan R. Friedman and Philip Langer—during the relevant time period were reasonable. However, the allocation of hours between the two warrants a reduction in fees.[1] Mr. Friedman, a partner at Fox Rothschild, has "more than 30 years of experience representing clients in the entertainment industry, which includes significant experience in copyright and breach of contract disputes." Dkt. No. 67 ¶ 11. Mr. Langer, an associate at Fox Rothschild, graduated from the Benjamin N. Cardozo School of Law in 2017 and "assists clients with commercial litigation and arbitration in matters in a variety of industries including real estate, construction, entertainment, and insurance." *Id.* Ex. 3. Mr. Langer has "specific experience in litigating matters related to intellectual property and the entertainment industry more generally." Dkt. No. 67 ¶ 12. And Fox Rothschild was recognized as "one of the nation's top-tier entertainment law firms by U.S. News – Best Lawyers®" and possesses "one of the largest Entertainment Law Departments" in the United States. *Id.* ¶ 9.

During the relevant time period, Mr. Friedman billed at an hourly rate of $650. Dkt. No. 67 ¶ 10. This rate is reasonable because it is within the band for hourly rates approved in this district for partners at New York City law firms involved in intellectual property and entertainment law

---

[1] Defendants have not billed for hours worked by any other attorneys. Dkt. No. 67 ¶ 6.

cases. *See Latin Am. Music Co., Inc., v. Spanish Broad. Sys., Inc.*, No. 13-cv-1526, 2020 WL 2848232 at *6 (S.D.N.Y. Jun. 1, 2020) ("[C]ourts in this district have generally found hourly rates of $400 to roughly $750 to be appropriate for partners in copyright and intellectual property cases."); *Broad. Music, Inc. v Pamdh Enters., Inc.*, No. 13-cv-2255, 2014 WL 2781846 at *6–7 (S.D.N.Y. June 19, 2014) (approving hourly rates of $570 for partner with fifteen years' experience in copyright law); *Sub-Zero, Inc., v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*, No. 13-cv-2548, 2014 WL 1303434, at *8–9 (S.D.N.Y. Apr. 1, 2014) (collecting cases and approving rates of $785 for a partner specializing in copyright); *Pyatt v. Raymond*, No. 10-cv-8764, 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) (collecting cases approving rates ranging from $400 to $650 for partners in copyright and trademark cases); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Liab. Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (finding partner's rate of $735 to be reasonable in copyright dispute); *GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08-cv-6030, 2009 WL 2150891, at *8 (S.D.N.Y. Jul. 20, 2009) (approving $650 and $600 hourly rates for partners specializing in intellectual property litigation).

Mr. Langer billed at an hourly rate of $425. Dkt. No. 67 ¶ 12. While this is on the upper end of the range for associates in this area of practice in New York City, given Mr. Langer's experience in this area, the Court finds that this rate is also reasonable. *See Latin Am. Music Co.*, 2020 WL 2848232 at *7 (approving associate rates from $435 to $465 and reducing another associate's hourly rate to $465); *Genger v. Genger*, No. 14-cv-5683, 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9 2015) ("New York district courts have . . . recently approved rates for law firm associates in the range of $200 to $450 per hour"); *Dweck v. Amadi*, No. 10-cv-2566, 2012 WL 3020029, at *4 & n.5 (S.D.N.Y. Jul. 6, 2012) (collecting cases approving rates between $180 and $440 per hour for associates) *report and recommendation adopted*, No. 10-cv-2577, 2012 WL 302415 (S.D.N.Y. Jul. 24, 2012); *Union of Orthodox Jewish Congregations of Am.*, 665 F. Supp. 2d at 437 (approving associate

hourly rate of $445). Therefore, the hourly rates charged by both Mr. Friedman and Mr. Langer were reasonable.

However, the staffing of this motion was excessively top-heavy, which supports a reduction in the fees to be awarded as a sanction in this case. Between September 23, 2022 and December 2, 2022, Mr. Friedman billed a total of 43.7 hours with respect to the motion while Mr. Langer billed a total of 29.4 hours with respect to the motion. Dkt. No. 67 Ex. 1; Dkt. No. 72 Ex. 1–2. This means that Mr. Friedman, a partner, billed nearly 1.5 times the amount that Mr. Langer had billed, or nearly 60% of the total billed hours. "[S]uch lopsidedly partner-heavy bills are quite unusual in the context of litigation work." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015). In the ordinary course, the Court expects "particularly with respect to . . . pretrial tasks, that associates shoulder much of the work, under the active supervision of partners, and that partners take lead roles as to projects for which their expertise adds value." *Id.* In part, that is because "[c]lients commonly demand that legal work be 'pushed down' to the timekeeper with the lowest billing rate who is able to capably perform that work, so as to keep legal fees manageable. In contrast, trial work tends to be more partner-intensive, befitting partners' greater trial expertise." *Id.*; *see also Arbor Hill*, 522 F.3d at 184 (noting that the touchstone for reasonable fees is "what a reasonable, paying client would be willing to pay"). Associate-heavy ratios, moreover, are particularly preferable "in a simple case" so as "to keep down costs." *King Fook Jewellry Group Ltd. v. Jacob & Company Watches, Inc.*, No. 14-cv-742, 2019 WL 2535928, at *7 (S.D.N.Y. June 20, 2019), *report and recommendation adopted*, No. 14-cv-742, 2019 WL 4879212 (S.D.N.Y. Oct. 3, 2019).

Although it is the Defendants' "prerogative to commission or to approve top-heavy staffing on this matter, . . . 'the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending. The test is whether the plaintiff spent the minimum necessary to litigate the case effectively.'" *HomeAway.com, Inc. v. City of New York*, 523 F.

7

Supp. 3d 573, 592 (S.D.N.Y. 2021) (quoting *Beastie Boys*, 112 F. Supp. 3d at 52) (cleaned up). In determining the amount of fees to award as a sanction, the Court concludes that it should base its award of fees on an objective standard, rather than deferring to what may have been Defendants' preference to staff the motion in a particularly top-heavy manner. With the understanding that an objectively reasonable client may prefer that more hours be billed to cost-effective associates, many courts in this district reduce fee awards where hours recorded fall heavily onto partners billing at high rates. *See HomeAway.com*, 523 F. Supp. 3d at 592–93 (reducing fee award by 15% where partners billed over 50% of all lawyer hours); *ML Fashion, LLC v. Nobelle GW, LLC*, 3:21-cv-00499, 2022 WL 1796993 at *4 (D. Conn. June 2, 2022) (reducing award for partner-billed hours constituting 47% of total hours); *Ferrara v. Happy Time Trucking LLC*, cv 17-7450, 2020 WL 13159036 at *11 (E.D.N.Y. Oct. 28, 2020) (reducing fee award by 25% for partner billing over 80% of the work); *Beastie Boys*, 112 F. Supp. 3d at 57 (reducing fee award by 30% mainly for "partner-intensive nature of the case staffing"). The Court will do the same here.

In sum, a reduction in fees is warranted because the motion could have been effectively litigated using a less partner-heavy staffing model. The Court finds it appropriate to discount the fees sought by Defendants by 10% to compensate for the unnecessarily top-heavy staffing of this relatively straightforward motion practice. *See, e.g.*, *HomeAway.com*, 523 F. Supp. 3d at 592–93.

### B. Reduction for Unreasonable Hours

The Court will further reduce the amount of sanctions imposed because Mr. Friedman and Mr. Langer billed excessive hours in opposing the judicial-notice motion. To determine the reasonableness of the number of hours billed, the Court must evaluate the fee application submitted by Defendants which "must be supported by contemporaneous time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *King Fook*, 2019 WL 2535928, at *5. When determining the reasonableness of the number of hours billed, "courts may

8

reduce fees 'where the hours billed are disproportionate to the quantity or quality of the attorneys' work.'" *Inga v. Nesama Food Corp.*, No. 20-cv-00909, 2021 WL 3624666, at *15 (S.D.N.Y. July 30, 2021) (quoting *Changxing Li v. Kai Xiang Dong*, No. 15-cv-07554, 2017 WL 892611, at *21 (S.D.N.Y. Mar. 7, 2017)), *report and recommendation adopted*, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021). "If a matter is complex, an attorney will reasonably expend more hours on it, but a simple matter will be subject to . . . reductions in hours expended." *H.C. v. New York City Department of Education*, --- F.4th ---, No. 21-1582, 2023 WL 4094873, at *3 (2d Cir. June 21, 2023); *see also Lilly v. City of New York*, 934 F.3d 222, 231–232 (2d Cir. 2019) (noting that the relative simplicity or complexity of a matter is "entirely appropriate" for a District Court to consider, because a "reasonable paying client would consider the complexity of his or her case when deciding whether an attorney's proposed hourly rate is fair, reasonable, and commensurate"); *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-cv-01254, 2020 WL 4750600, at *3 (S.D.N.Y. Aug. 17, 2020) (noting that attorney's fees may be reduced when matters are "straightforward" or "tangential," thereby "holding little relevance to the case").

Responding to the judicial-notice motion was a relatively simple matter. At conferences before the motion was filed, the Court repeatedly noted its skepticism that Plaintiff's position could prevail. *See, e.g.*, Dkt. No. 46 at 6:24–7:4; 7:18–20, 10:24–11:10, 14:4–5. And Defendants' response to the motion, likewise, signaled that opposing Plaintiff's request for judicial notice was not particularly difficult: it totaled eight substantive pages that relied on "well-established law in this Circuit" to demonstrate that Plaintiff's position was meritless. Dkt. No. 48. Moreover, "[t]he issues that needed to be presented to the Court were largely factual, and the legal principles that counsel invoked were not complex." *Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*, No. 12-cv-4221, 2015 WL 9287121, at *6 (S.D.N.Y. Feb. 5, 2015), *report and recommendation adopted*, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015). As a result, "[u]nder the circumstances, it would seem that

the level of counsel's experience should have allowed them to prepare [this brief] in less than the . . . hours claimed." *Id.* Additionally, the judicial-notice motion was "tangential" to the merits of the litigation, further supporting a reduction in sanctions. *Fashion Exchange*, 2020 WL 4750600, at *3.

And finally, the Court also finds the amount of time devoted to Rule 11 motion practice and preparing for fee calculation exceeded what reasonably could be expected. Defendants billed 40.1 hours preparing for and litigating the opposition to judicial notice, 16.4 hours filing and defending their Rule 11 motion for sanctions, and 16.6 hours preparing for and defending time entries relevant to their attorneys' fees request, for a total of 73.1 hours associated with this motion. *See* Dkt. No. 67-1; Dkt No. 72-1; Dkt. No. 72-2. That is almost two weeks' worth of work. It is excessive for this relatively straightforward motion practice. The Court has reviewed each of counsel's time entries, and concludes that a 30% across the board reduction in the fees sought is the proper decrement to arrive at the amount of time that would have been required to brief the motions effectively and efficiently. *See Powell*, 2015 WL 9287121, at *7 (reducing fees by approximately 30 percent because of the relative simplicity of the motion).

Together with the 10% reduction for top-heavy billing, this amounts to a total reduction of 40% from the total amount sought as a sanction by Defendants. This yields a reduction of $16,360.00 from the $40,900.00 sought by Defendants, bringing the total amount of attorneys' fees to be awarded as a sanction to $24,540.00.[2]

---

[2] In reaching its conclusion regarding the appropriate amount of the sanction to award in this case, the Court is mindful that an award of sanctions is appropriately "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706–07 (S.D.N.Y. 2017) (explaining that "decision of what type of sanction is appropriate in a given case" is "left to the sound discretion of a district court"). That principle has informed its evaluation of the fee request. And the Court's conclusion is consistent with it.

## V.     CONCLUSION

For the foregoing reasons, the Court awards Defendants $24,540.00 in sanctions under Rule 11. Ms. McCaw and her law firm, Miami Entertainment Law Group, are jointly and severally liable for the payment of that amount. *See* Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."). Payment is to be made in full to Defendants no later than October 15, 2023.

The Clerk of Court is directed to mail a copy of this order to Ms. McCaw at the Miami Entertainment Law Group address that she previously provided.

SO ORDERED.

Dated: July 10, 2023  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge