```
                                             ┌─────────────────────────────────┐
                                             │ USDC SDNY                       │
                                             │ DOCUMENT                        │
UNITED STATES DISTRICT COURT                 │ ELECTRONICALLY FILED            │
SOUTHERN DISTRICT OF NEW YORK                │ DOC #: _____          │
-----------------------------------------X   │ DATE FILED:  8/13/2023          │
SHAUNA MCKENZIE-MORRIS,              :       └─────────────────────────────────┘
                                     :
                         Plaintiff,  :
                                     :              1:22-cv-1138-GHW
             -against-               :
                                     :           MEMORANDUM OPINION
V.P. RECORDS RETAIL OUTLET, INC., et al., :           AND ORDER
                                     :
                         Defendants. :
                                     :
-----------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

This order and opinion resolves a second partial motion to dismiss filed by Defendants—various entities related to VP Records and Greensleeves Publishing, Ltd.—seeking to narrow a case brought by Plaintiff Shauna McKenzie-Morris, a singer-songwriter better known by her performing name "Etana."  Plaintiff, now proceeding *pro se*, brings contract-based, copyright, fraud, and accounting causes of action.  As they did in their prior motion, Defendants move to dismiss all of Plaintiff's non-contract claims; they also now move to dismiss part of a contract-based cause of action that they contend represents a new claim.

Because—construing Plaintiff's active complaint liberally in line with her *pro se* status—her new contract-breach allegations constitute part of a claim rather than a standalone claim, the Court will not dismiss those allegations.  But because Plaintiff's copyright and fraud claims are time-barred, and her accounting claim is preempted, those claims will be dismissed.  Defendants' motion to dismiss is thus GRANTED IN PART.

## II.   BACKGROUND[1]

### a.   Facts

Plaintiff Shauna McKenzie-Morris, professionally known as Etana, is a Jamaican reggae artist.  Dkt. No. 103 (Third Amended Complaint, or "TAC") ¶ 1.  Since her first commercial release in 2006, she has sold millions of records worldwide.  *Id.* ¶ 2.  She has had a song "certified gold," is the first female artist to receive two Grammy nominations in the Reggae album category, and two of her albums have topped the Billboard Reggae charts.  *Id.*; *see also id.* ¶¶ 27–31 (further describing McKenzie-Morris's background and success).

Defendant VP Records—the collective name for defendants VP Records Retail Outlet, V.P. Music Group, V.P. Record Distributors, VP Records of Brooklyn, and STB Music—is the largest reggae label, distributor, and publisher in the world.  *Id.* ¶ 47.  Defendant Greensleeves Publishing, Ltd. ("GPL" or "Greensleeves," and together with VP Records, "Defendants"), formerly a British record label known as Greensleeves Records, was acquired and renamed by VP Records in February 2008.  *Id.* ¶¶ 48–49.  From 2007–2014, Plaintiff entered into several contracts with Defendants that form the foundation of this litigation.  *Id.* ¶ 2.

The parties' formal relationship began in May 2007, when Plaintiff signed an exclusive recording agreement with VP Records for the delivery of four albums.  *Id.* ¶ 55; *see id.* Ex. G (the "2007 Recording Agreement").  Under that agreement, VP Records had the responsibility to both account for and pay royalties to McKenzie-Morris for sales of the albums delivered under the contract.  *See id.* ¶¶ 56–57 (setting out the contract's terms in detail).  The agreement was structured

---

[1] The facts are drawn from Plaintiff's third amended complaint. Dkt. No. 103 ("TAC").  For this motion, the Court must accept as true the facts alleged in the amended complaint. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In addition, because Plaintiff is proceeding *pro se*, the Court "may consider" facts "taken from [Plaintiff's] pro se opposition to the motion to dismiss," and has done so in certain instances. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 120 n.1 (2d Cir. 2016).  Finally, motions filed by *pro se* litigants are liberally construed and interpreted "to raise the strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

so that VP Records was required to pay Plaintiff royalties at agreed-upon rates in excess of (1) what VP Records initially provided Plaintiff as an advance on royalties, and (2) any other costs or expenses incurred by VP Records in connection with the albums. *See id.* ¶¶ 59, 71; *see also, e.g., id.* Ex. G § 6.1 (noting that advances are "charged against and recoupable from any or all royalties accruing to Artist"); *id.* § 6.2(b)(v) (noting that tour expenses paid by the company "shall constitute Advances recoupable by Company from any and all royalty under this or any other agreement"); *id.* § 7.6 ("The terms 'net receipts' and 'net amount received' and similar terms" in the royalty section of the contract are calculated "after deduction of any costs or expenses or amounts which [VP Records is] obligated to pay to third parties."); *id.* § 15.1 ("'Advance' shall mean a prepayment of royalties, and shall be charged against and recoupable from any and all record royalties accruing hereunder."). Between June 2008 and October 2014, Plaintiff delivered the four albums under the 2007 Recording Agreement. *Id.* ¶¶ 58–68. The albums were successful, with the fourth album—entitled "I Rise"— reaching the top spot on the Billboard Reggae Charts. *See id.* Upon the delivery of the fourth album, Plaintiff had fully performed under the Agreement, which was then concluded. *Id.* ¶ 68. Plaintiff alleges, however, that despite her performance and VP Records having recouped its advance and any expenses associated with the albums, VP Records has failed to pay royalties in connection with the albums since March 31, 2020. *Id.* ¶¶ 71–72.

After the release of her first album (entitled "The Strong One") in June 2008, Plaintiff entered into a short form "deal memo" with GPL (the "GPL Deal Memo") roughly a month later. *Id.* ¶¶ 58, 74; *see id.* Ex. D. That agreement was then formalized through an agreement (the "GPL Songwriter Agreement"). *Id.* ¶¶ 76–77; *see id.* Ex. E. Under the GPL Songwriter Agreement, GPL was given rights and interests in Plaintiff's musical compositions that she had previously written or that she wrote during the five-year term of the agreement. *See id.* Ex. E § 3.1. Similar to VP Records' responsibilities under the VP Recording Agreement, under the GPL Songwriter

Agreement, GPL had the responsibility to account for and pay royalties to Plaintiff.  *Id.* ¶¶ 78–80.
And like the VP Recording Agreement, the GPL Songwriter Agreement was structured so that once
GPL recouped the money that it had paid as an advance on royalties and any expenses incurred in
executing the agreement, Plaintiff was entitled to royalty payments.  *Id.* ¶¶ 84, 87–88; *see id.* Ex. E § 8
(noting that royalties should be paid "after deducting any and all unrecouped advances and
chargeable costs").  Plaintiff alleges, however, that despite her performance and the fact that GPL
recouped all of its expenses, GPL has failed to fully pay her royalties under the Songwriter
Agreement.  *Id.* ¶¶ 87, 91.

 Plaintiff also raises several other issues with this contract, the first of which relates to the
relationship between VP Records and GPL.  Plaintiff alleges that, at the time she negotiated the
GPL Deal Memo and Songwriter Agreement, she was "unwilling[ ] to have [another] Recording and
Publishing agreement with" VP Records.  *Id.* ¶ 73; *see also id.* (noting that she turned down a
publishing agreement with VP Records' affiliate STB Music in May 2008, and arguing that this
demonstrates her unwillingness to resign with VP Records).  While GPL was acquired by VP
Records in February 2008, *id.* ¶ 49, Plaintiff alleges that she was unaware of that fact throughout the
negotiations concerning the GPL Deal Memo and the GPL Songwriter Agreement.  *Id.* ¶ 50; *see also
id.* ¶ 77.  Instead, she says, she believed GPL was a "separately owned and operated UK company."
*Id.* ¶ 51; *see id.* ¶ 197 (alleging that GPL "has held itself out as a private limited liability company
organized under the laws of the United Kingdom with [a] U.S. headquarters") (internal quotation
marks omitted).

 Plaintiff further alleges that certain individuals took actions to conceal the relationship
between VP Records and GPL.  For example, she states that the GPL Songwriter Agreement was
substantially the same as the proposed (and rejected) agreement with STB Music, but that she was
not informed of that fact.  *Id.* ¶ 76.  And she points to two emails sent by Olivier Chastan—at that

time the Executive Vice President of VP Records and the director of GPL—that she says were designed to "distance[ ] VP Records and Greensleeves." *Id.* ¶ 54; *see id.* ¶ 52 (stating that Chastan was the Executive Vice President of VP Records); Dkt. No. 118 at 17 (stating that Chastan was the "director of Greensleeves").  The first was a July 31, 2008 email wherein Chastan explained to Plaintiff and others that he had paid an expense from GPL rather than from VP Records because he did not "have check signing authority on [the] VP Records bank account, only on Greensleeves." TAC ¶ 104; *see id.* Ex. K (that email and related emails).  The second was an email from Chastan to Plaintiff and others on October 13, 2008, wherein he "represented that VP Records did not administer Greensleeves Publishing in the United States." *Id.* ¶ 104; *see id.* Ex. K.  Chastan sent both of those emails from the email address "oc@vprecords.com," and a signature block on a related email sent from Chastan to Plaintiff—which, like the other two emails from Chastan, Plaintiff attaches to her complaint—listed Chastan's title as "VP Records Vice-President, International." *Id.* Ex. K.  Nonetheless, Plaintiff maintains that through Chastan's emails, VP Records had "deceiv[ed]" her into believing that GPL was "a separate, distinctive entity" from VP Records, and that "if it was not for this material misrepresentation by VP Records, McKenzie would not have entered into the GPL Songwriter Agreement." *Id.* ¶¶ 198–199.

Finally, Plaintiff takes issue with what she characterizes as the "backdating" of the GPL Songwriter Agreement.  The agreement states that it is effective "as of" December 1, 2007, even though the parties did not actually sign it until mid-2008. *Id.* ¶ 76; *see id.* Ex. E.

In March 2014, Plaintiff entered another agreement with GPL, which gave GPL rights in albums featuring Plaintiff's recorded performances and assigned GPL an ownership interest in, and the right to collect income generated by, Plaintiff's lyrics and music (the "GPL Co-Pub Agreement"). *Id.* ¶¶ 92–93, *see* FAC Ex. M.  Like the other contracts at issue in this case, GPL had the obligation under this agreement to account for and pay royalties to Plaintiff. *Id.* ¶¶ 94–95.  And

like those other agreements, the royalties were structured so that once GPL recouped money paid as an advance on royalties and any expenses incurred in executing the agreement, Plaintiff was entitled to royalty payments. *Id.* ¶ 95. Further, this agreement was made coterminous with the VP Recording Agreement, *see id.* ¶ 98, so Plaintiff's performance of it was completed when she delivered the fourth album ("I Rise") under the 2007 Recording Agreement, *see id.* ¶ 99. Plaintiff alleges that although she fully performed her obligations under this contract and GPL has recouped its advance and any expenses associated with this agreement, GPL has failed to fully pay her royalties owed under the GPL Co-Pub Agreement. *Id.* ¶¶ 102–104.

Plaintiff states that she holds the "copyright" in a list of ten "sound recordings"—"Wrong Address," "Roots," "Nuclear," "Don't Forget," "Live & Love Life," "Jah Chariot," "Free," "Happy Heart," "I Am Not Afraid," and "Beautiful Day"—that were included on one of three albums: "The Strong One," "Free Expressions," and "Better Tomorrow." *See id.* ¶¶ 148, 150; *id.* Ex. A; *id.* Ex. J.[2] Those albums were released in June 2008 ("The Strong One"), February 2011 ("Free Expressions"), and February 2013 ("Better Tomorrow"). TAC ¶¶ 58, 61, 63. Each album includes a copyright notice, however, listing "VP Music Group Inc." as the copyright holder. *See id.* Ex. J; Dkt. No. 111-1.[3] And in an email from Chastan to Plaintiff in 2012, Chastan wrote that "GPL shall continue to control all rights and interests in and to the results of your services under the [GPL Songwriter] Agreement, including but not limited to the titles, lyrics, and music of all Compositions

---

[2] Exhibit J contains song lists for "The Strong One" and "Free Expressions," which cumulatively contain nine of the ten songs for which Plaintiff alleges she holds a copyright. *See* TAC Ex. J. Plaintiff has also attached a document to her opposition to Defendants' motion to dismiss containing a track list indicating that the final song, "Beautiful Day," was published on the "Better Tomorrow" album. Dkt. No. 118 Ex. E. The Court may consider this document. *See Ceara v. Deacon*, 68 F. Supp. 3d 402, 405 (S.D.N.Y. 2014) ("In deciding a motion to dismiss a pro se complaint . . . it is appropriate to consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint' . . . including 'documents that a pro se litigant attaches to [her] opposition papers.'" (first quoting *Alsaifullah v. Furco*, No. 12-cv-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013), then quoting *Agu v. Rhea*, No. 09-cv-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010))).

[3] Exhibit J to Plaintiff's complaint contains the packaging for "The Strong One" and "Free Expressions." Additionally, Plaintiff relies on the terms and effects of the "Better Tomorrow" album in her complaint. TAC ¶¶ 63–64; *see also* Dkt. No. 118 at 15 (further relying on the album as part of her copyright claim). As a result, the Court may consider the packaging for "Better Tomorrow," which Defendants have attached to their briefing. *See* Dkt. No. 111-1.

written, composed, or created by your during the Term of the Agreement for the life of copyright in and to such works."  TAC Ex. E.

### b. Procedural History

On January 7, 2022, Plaintiff and a limited liability company that she controls filed a complaint against Defendants in the Supreme Court of New York County, which was later removed to this Court.  *See* Dkt. No. 1; Dkt. No. 1-1.  That complaint was amended in April 2022, Dkt. No. 23, and Defendants filed a partial motion to dismiss that fourteen-count amended complaint on May 24, 2022.  Dkt. No. 26.  On December 30, 2022, this Court largely granted Defendants' motion. Dkt. No. 75 ("MTD I").  The Court held that while the amended complaint sufficiently stated a claim for fraud as against VP Records, the other claims on which Defendants moved—for copyright infringement, unjust enrichment, conversion, tortious interference, breach of fiduciary duty, accounting, imposition of a collective trust, declaratory judgment, and permanent injunction, as well as for fraud as against GPL—were subject to dismissal.  *See id* at 6–25.  But the Court also granted leave to replead all of the dismissed claims.  *Id.* at 25–26.

On January 17, 2023, the then-Plaintiffs submitted a second amended complaint.  Dkt. No. 80.  Before motion practice concerning that complaint could begin, however, McKenzie-Morris determined that she wished to proceed in this case *pro se*.  *See* Dkt. No. 93 (motion of Plaintiff's former counsel to withdraw); Dkt. No. 95 (the Court granting that motion).  Plaintiff then removed her LLC as a plaintiff in the case and filed a third amended complaint, which is the active complaint here, on April 25, 2023.  *See* Dkt. No. 101 (removing the LLC); Dkt. No. 103 (the TAC).  The third amended complaint reduced Plaintiff's claims from fourteen to six:  three breach-of-contract claims,

TAC ¶¶ 105–146; a copyright claim, *id.* ¶¶ 147–190; a fraud claim, *id.* ¶¶ 191–218, and an accounting claim, *id.* ¶¶ 219–230.

On May 30, 2023, Defendants filed a partial motion to dismiss seeking to dismiss Plaintiff's three non-contract claims as well as one part of her first breach-of-contract cause of action.  Dkt. No. 110 (motion); Dkt. No. 112 (memorandum in support, or "Defs' Mem.").  They cast the additions to Plaintiff's first breach-of-contract claim as themselves representing a new claim, and argued that it was barred by the scope of this Court's order concerning leave to replead, subject to dismissal under the applicable statute of limitations, and implausible in any event.  Defs' Mem. at 6– 9.  Defendants further argued that Plaintiff's copyright and fraud claims substantively failed to state a claim on which relief could be granted and were barred by relevant statutes of limitations.  *Id.* at 9– 23.  And they contended that Plaintiff's accounting claim was subject to preemption under the Copyright Act.  *Id.* at 24.  Plaintiff opposed Defendants' motion on June 20, 2023, arguing both that her claims were supported on the merits and that equitable estoppel should overcome any statute-of-limitations arguments.  Dkt. No. 118 ("Pl's Opp.").  Defendants replied on June 28, 2023, Dkt. No. 119 ("Reply"), at which point the motion was fully briefed.

## III.   LEGAL STANDARD

### a.   Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "To survive

dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

"A court's task" on a motion to dismiss "is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).

Finally, on a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006). But a court may

consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)).  A court may also consider a document relied on by the plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted).  In addition, because Plaintiff is proceeding *pro se*, the Court "may consider" facts "taken from [Plaintiff's] pro se opposition to the motion to dismiss." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 120 n.1 (2d Cir. 2016).

### b.  Standard of Review for *Pro Se* Litigants

Motions filed by *pro se* litigants are liberally construed and interpreted "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))).  However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## IV.  DISCUSSION

Defendants have moved to dismiss a part of Plaintiff's first cause of action and all of Plaintiff's three non-contract claims.  Because the Court does not view the allegations that Defendants seek to dismiss from Plaintiff's first cause of action as a separate "claim" that can be independently dismissed, Defendants' motion will be denied as to Plaintiff's first cause of action.

But because Plaintiff's copyright and fraud claims are time-barred, and her accounting claim is preempted by the Copyright Act, Defendants' motion will be granted as to those three claims.

### A.   First Cause of Action:  Contract Breach

Defendants' motion to dismiss two paragraphs of Plaintiff's first cause of action will be denied.  *See* Defs' Mem. at 6 (seeking to dismiss TAC ¶¶ 106–107).  Plaintiff's first cause of action alleges that VP Records breached the 2007 Recording Agreement.  TAC ¶¶ 105–114.  Defendants contend that two paragraphs within that cause of action—paragraphs 106 and 107—represent a "new breach claim" about allegedly improper inclusion of certain works on two albums.  Defs' Mem. at 6; *see also id.* at 7 n.6 (stating, without further enhancement, that "[i]t is beyond dispute that [paragraphs 106 and 107 represent] a new claim"); Reply at 6 ("Plaintiff's new claim has nothing to do with whether she received the royalties due to her under the 2007 Recording Agreement.").  Defendants then argue that, thus construed, this purported new claim should be dismissed as exceeding the scope of the Court's prior grant of leave to amend, barred by the relevant statute of limitations, and implausibly pleaded.  *Id.* at 7–9.

But the premise of Defendants' argument is erroneous because, liberally construed, Plaintiff's allegations in paragraphs 106 and 107 are connected to her royalty-based allegations elsewhere in the first cause of action.  *See Triestman*, 470 F.3d at 474 (noting that courts are required to construe allegations in *pro se* pleadings "to raise the strongest arguments that they *suggest*").  Plaintiff first alleges in paragraph 106 that Defendants included certain works that they should not have on two albums.  TAC ¶ 106.  Then, in paragraph 107, she connects that allegation to the rest of her first cause of action by stating that Defendants improperly "charged [Plaintiff's] royalty account" when they used these songs.  *Id.* ¶ 107.  Generously construing Plaintiff's allegations, the Court understands her to be arguing that when Defendants improperly included these songs on two albums, they also improperly charged her royalty account for expenses associated with the songs—

and because she is only paid royalties after deductions for such expenses, the overall amount of royalties that she has received under the 2007 Recording Agreement has been negatively impacted. *See, e.g.*, *id.* Ex. G § 7.6 (noting that any payment to third parties as a result of recordings used under the 2007 Recording Agreement would be deducted from royalty payments); *see also* Pl's Opp. at 12 (explaining that she added paragraphs 106 and 107 to help explain why Defendants' "insiste[nce] that the Plaintiff's [royalty] account is still in arrears" is incorrect).[4] So liberally construing Plaintiff's pleadings, the paragraphs that Defendants challenge do not represent a standalone claim, but instead are part of a single claim contained in the first cause of action.[5]

Because the Court views the paragraphs that Defendants seek to dismiss as part of Plaintiff's first claim, rather than as a standalone claim, Defendants' motion to dismiss those paragraphs will be denied. "As the Second Circuit has long held, 'part of only a single claim cannot be adjudicated with finality.'" *In re Am. Exp. Anti-Steering Rules Antitrust Litig.*, 343 F. Supp. 3d 94, 101 (E.D.N.Y. 2018) (quoting *Reiser v. Baltimore & Ohio R.R. Co.*, 224 F. 2d 198, 204 (2d Cir. 1955)); *see also Tromblee v. New York*, No. 19-cv-0638, 2021 WL 981847, at *11 (N.D.N.Y. 2021) (same); *BBL, Inc. v. City of Angola*, 908 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint

---

[4] Because paragraphs 106 and 107 can be read as additional facts meant to clarify Plaintiff's first cause of action, Defendants' argument that adding these facts exceeded the scope of the Court's leave to replead, *see* Defs' Mem. at 7, is also misplaced. *See* Dkt. No. 98 (permitting Plaintiff, in her third amended complaint, "to correct any factual inaccuracies in the prior complaint").

[5] Various legal definitions of "claim," all of which note that where a plaintiff seeks legal relief based on a set of operative facts it is those facts together that constitute the relevant claim for relief, also support treating paragraphs 106 and 107 as part of a claim rather than as a standalone cause of action. *See Goldstein v. N. Jersey Tr. Co.*, 39 F.R.D. 363, 366 (S.D.N.Y. 1966) (defining "the word 'claim,' as it appears in Fed. R. Civ. P. 12(b)(6)[,]" to mean "the aggregate of operative facts which give rise to a right enforceable in courts" (quoting *Original Ballet Russe Ltd. v. Ballet Theatre, Inc.*, 133 F.2d 187, 189 (2d Cir. 1943))); *Collins v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 83, 87 (2d Cir. 1939) (Clark, J., concurring) (arguing that the federal "rules make the extent of the claim involved depend not upon legal rights, but upon the facts, that is, upon a lay view of the past events which have given rise to the litigation" and that this "transaction or occurrence" represents "the subject matter of a claim"); *Claim*, Black's Law Dictionary (10th ed. 2014) (defining "claim" as a "demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for").

includes factual allegations that state a plausible claim for relief.").[6]  That rule precludes Defendants'

request to dismiss part (but not all) of Plaintiff's first cause of action, so Defendants' motion is

denied as to paragraphs 106 and 107 of Plaintiff's third amended complaint.

### B.  Fourth Cause of Action:  Copyright Infringement

Defendants' motion to dismiss Plaintiff's fourth cause of action for copyright infringement

will be granted because Plaintiff's claim is time-barred.  Civil actions under the Copyright Act are

subject to a three-year statute of limitations.  17 U.S.C. § 507.  It is clear from Plaintiff's complaint

that the gravamen of her copyright cause of action is her claim that she owns certain compositions.

*See* TAC ¶ 148 (alleging that she "owns the copyright" in certain sound recordings); *id.* ¶ 174

(alleging that VP Records and GPL "continue to claim sole copyright ownership" over certain

compositions, which is the conduct giving rise to this cause of action).  As a result, her claim is a

copyright "ownership claim," because it "focuses on competing assertions of ownership or rights in

the work at issue."  *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 730–31 (S.D.N.Y. 2021)

(quoting *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011)).  An "ownership claim accrues only once,

when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'"

*Kwan*, 634 F.3d at 228 (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)).  And such

---

[6] The language of Rule 12(b)(6)—which permits only dismissals for "failure to state *a claim* upon which relief can be granted" (emphasis added)—can also be contrasted with the rule governing summary-judgment motions, which explicitly notes that "[a] party may move for summary judgment" on entire claims or defenses "*or [a] part of [any] claim or defense.*" Fed. R. Civ. P. 56(a) (emphasis added).  That the drafters of the federal rules chose to include this specific language as part of the summary-judgment rule but did not include it in the motion-to-dismiss rule further indicates that a party may not move to dismiss parts of a claim.  *Cf. Dean v. United States*, 556 U.S. 568, 573 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

inquiry notice occurs when, among other events, one party makes an "express assertion of sole authorship or ownership" of the contested work. *Id.*

Here, the works that are the basis for Plaintiff's copyright claim were contained on three albums—"The Strong One," "Free Expressions," and "Better Tomorrow." *See* TAC ¶¶ 148, 150; *id.* Ex. A; *id.* Ex. J; Pl's Opp. Ex. E. Those albums were released in June 2008 ("The Strong One"), February 2011 ("Free Expressions"), and February 2013 ("Better Tomorrow"). TAC ¶¶ 58, 61, 63. And VP Music Group Inc.—one of the VP Records Defendants here—asserted sole copyright ownership on the cover of each album. *See* TAC Ex. J; Dkt. No. 111-1. Those assertions were sufficient to put a reasonably diligent plaintiff on notice that VP Records was asserting copyright in the works contained in the albums. *Kwan*, 634 F.3d at 228; *see, e.g.*, *Charles v. Seinfeld*, 410 F. Supp. 3d 656, 660 (S.D.N.Y. 2019) (Nathan, J.) (noting that where the defendants "went on to produce and distribute [a] show without giving any credit to" the plaintiff, a reasonably diligent plaintiff would have been on notice of a copyright dispute); *Mahan v. Roc Nation, LLC*, No. 14-cv-5075, 2015 WL 1782095, at *3–4 (S.D.N.Y. Apr. 15, 2015) (finding that because "the copyright notices printed on the Albums' packaging should have given [the plaintiff] reason to know of his alleged injury," his claims must be dismissed as time-barred); *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1315–16 (S.D.N.Y. 1997) ("Based on the uncontested facts, [the plaintiff's] co-authorship claim accrued no later than the summer of 1984 when [he] received a copy of [the contested work], which bore a copyright notice reading [that the copyrighted work] is copyrighted 1982 by [the defendant]."). As a result, all of Plaintiff's claims were time-barred as of 2016—three years from the

publication of the final relevant album.  Because Plaintiff did not bring this case until 2022, her copyright claim is barred by the applicable statute of limitations.[7]

For her part, Plaintiff does not contest that the Copyright Act's statute of limitations has run on this claim.  Instead, she "invoke[s] the doctrine of equitable estoppel" to argue that the Defendants should be prevented from relying on the statute of limitations to dismiss the claim.  Pl's Opp. at 7.  But equitable estoppel is not warranted here.  In New York, equitable estoppel may be "invoked in cases where the plaintiff knew of the existence of [her] cause of action but the defendant's conduct caused him to delay in bringing [her] suit."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49–50 (2d Cir. 1985)); *see also MRE Tech. Sols. LLC v. Smiths Detection, Inc.*, 187 N.Y.S. 3d 633, 635 (1st Dep't 2023) ("Equitable estoppel is an extraordinary remedy, which applies where a party is prevented from filing an action within the applicable statute of limitation due to his or her reasonable reliance on deception, fraud or misrepresentations by the other.").  "To invoke equitable estoppel, a plaintiff must show that:  '(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment.'"  *Id.* (quoting *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)).  The "[p]laintiff has the burden of establishing that [the] defendant engaged in

---

[7] The publication of these albums with VP Records' assertion of sole copyright was sufficient to put Plaintiff on notice of the copyright dispute and thus trigger the running of the statute of limitations.  But the Court also notes that at least one other event would have likely been independently sufficient to trigger the statute's running—Chastan's 2012 email stating that GPL would control "all rights and interests" to works created under the GPL Songwriter Agreement "for the life of the copyright in and to such works."  TAC Ex. E; *see id.* Ex. E § 3.1 (noting that through the GPL Songwriter Agreement, Plaintiff conveyed her interest, including "all world-wide copyrights," in works written before or during the term of the agreement).

affirmative misconduct that prevented it from timely asserting its claims." *MRE Tech.*, 178 N.Y.S. 3d at 635.

Plaintiff has failed to meet that burden. Her estoppel theory is as follows: as a result of two lawsuits filed by her co-writer Kemar McGregor in the Eastern District of New York, Defendants here were required by settlement agreements to "settle [a] dispute on copyrights." Pl's Opp. at 5–6. Plaintiff alleges that in these agreements, reached in 2014 and 2018, "the artist rights"—that is, the Court understands, Plaintiff's rights—"within these sound recordings were reserved." *Id.* at 5. Accordingly, Plaintiff argues, she "relied twice on the [Defendants'] good faith conduct so ordered by a judge on a settlement agreement to settle the dispute on copyrights, [and her] reliance on the [Defendants'] conduct resulted in further delays in taking action against Defendants." *Id.* at 6.

The problem with this argument is that Plaintiff does not allege, as necessary, that Defendants made any misrepresentation *to her*. As several courts in this state and district have noted, plaintiffs must "allege [a] specific misrepresentation *to them* by defendants" in order to adequately show that it would be reasonable to rely on such a misrepresentation. *Zumpano v. Quinn*, 6 N.Y.3d 666, 675 (2006) (emphasis added); *see Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 619 (S.D.N.Y. 2021) ("[E]quitable estoppel is only appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants' misconduct toward the potential plaintiff, not a community at large." (quoting *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 445 (S.D.N.Y. 2014))). Plaintiff's briefing makes clear that she was not a party to the cases from which the settlement agreements arose, nor does she represent that Defendants here ever made a relevant misrepresentation to her (as opposed to McGregor). So Plaintiff has not shown that any defendant here would have reason to believe that she would rely on any misrepresentation made (if, in fact, a misrepresentation was made), and thus has not carried her burden to demonstrate that she is entitled to the "extraordinary relief" of equitable estoppel. *MRE Tech.*, 187 N.Y.S. 3d at 635. As a

result, Plaintiff's copyright claim is time-barred under the Copyright Act's three-year statute of limitations, and Defendants' motion to dismiss is granted as to that claim.

### C.   Fifth Cause of Action:   Fraud

Plaintiff's fifth cause of action for fraud will likewise be dismissed.  "Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015).  Most of Plaintiff's fraud claim, however—allegations about alleged "backdating" of certain agreements by use of "as of" provisions, *see* TAC ¶¶ 192–195, allegations that Defendants' had disregarded their obligations under relevant contracts, *see id.* ¶ 202, and various other scattershot allegations about alleged side deals, bootleg sales, improper exploitation of property, and evasive tactics without additional factual enhancements, *see id.* ¶¶ 204–214—falls well short of that standard.

As the Court explained in its first motion-to-dismiss opinion, because "'as of' dates are common and uncontroversial contractual provisions," "absent any allegation that the provision[s] [were] inserted *after* McKenzie-Morris signed the agreement"—allegations which are likewise not contained in Plaintiff's current complaint—such provisions do not represent actionable fraud. MTD I at 18–19; *see U.S. Bank, N.A. v. Squadron VCD, LLC*, No. 10-cv-5484, 2011 WL 4582484, at *5 (S.D.N.Y. Oct. 3, 2011) ("[I]t is fundamental that where parties to an agreement expressly provide that a written contract be entered into 'as of' an earlier date than that on which it was executed, the agreement is effective retroactively 'as of' the earlier date and the parties are bound thereby accordingly." (quoting *Colello v. Colello*, 780 N.Y.S. 2d 450, 453 (4th Dep't 2004))).  Additionally, allegations that Defendants acted in "wanton disregard" of their contractual allegations are duplicative of Plaintiff's contract-based claims (as they were in Plaintiff's prior pleading).  *See* MTD I at 19; *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 410–11 (S.D.N.Y.

2016) ("New York law bars fraud claims that 'arise[ ] out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties.' . . . In such circumstances, 'the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.'" (quoting *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001))). And finally, just as in Plaintiff's prior complaints, her remaining "scattershot allegations" fail to satisfy Federal Rule of Civil Procedure 9(b)'s requirement that fraud claims be pleaded with particularity. *See* MTD I at 19–20; *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021) (noting that to satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (quoting *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021))); *see also In re Ditech Holding Corp.*, No. 18-cv-10412, 2023 WL 1805296, at *16 (S.D.N.Y. Feb. 7, 2023) ("Pro se filers are not excluded from the requirements of Rule 9(b).").[8]

That leaves Plaintiff's allegations about representations made by Olivier Chastan, who was Executive Vice President of VP Records and the director of GPL at the time that the relevant statements were made. TAC ¶ 52; Pl's Opp. at 17. One of these statements was in an email from Chastan to Plaintiff on October 13, 2008, wherein he "represented that VP Records did not administer Greensleeves Publishing in the United States." TAC ¶ 104; *see id.* Ex. K. Plaintiff alleges that this statement was made knowingly, with "the intention of deceiving McKenzie that she had . . . entered an agreement with GPL" rather than with VP Records. *Id.* ¶¶ 198–199. And Plaintiff further alleges that "if it was not for this material misrepresentation by VP Records, McKenzie

---

[8] Plaintiff also tacks on a series of additional allegations at the end of the section of her opposition papers discussing her fraud claim. *See* Pl's Opp. at 19–20. These allegations are likewise devoid of the necessary factual particulars to adequately state fraud claims under Rule 9(b). They additionally represent retreads of either her copyright claim—which is barred for the reasons already explained—or her contract-breach claims, which a fraud claim may not duplicate. *See Almeciga*, 185 F. Supp 3d at 410–11. As a result, these allegations do not support a fraud claim either.

would not have entered into the GPL Songwriter Agreement." *Id.* ¶ 199.  In the first motion-to-dismiss opinion, the Court found that these allegations—which alleged a specific misrepresentation, knowledge of the fact's falsity, an intent to induce reliance, justifiable reliance by Plaintiff, and damages—sufficiently stated a fraud claim against VP Records.  MTD I at 16; *see Loreley*, 797 F.3d at 170.[9]

This claim is now subject to dismissal, however, because the attachment of this email and others to Plaintiff's active complaint allows the Court to conclude that Plaintiff's fraud claim is time-barred.  In New York, the statute of limitations for a fraud claim is the "greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).  And the emails in which Chastan made what Plaintiff casts as misrepresentations about the relationship between VP Records and GPL were sent in July and October of 2008.  TAC Ex. K.  That is obviously far more than six years before Plaintiff commenced her suit in 2022, meaning that Plaintiff's claim is barred by the statute of limitations unless she could not "with reasonable diligence have discovered" the fraud she alleges until two years before 2022.  N.Y. C.P.L.R. § 213(8).

The emails themselves, however, demonstrate that with reasonable diligence Plaintiff could have discovered that VP Records and GPL were not "separate, distinctive entit[ies]" when the emails were sent.  *See* TAC ¶ 199 (alleging this as the material misrepresentation that she relied on in entering the GPL Songwriter Agreement).  "The issue of when a plaintiff could have discovered an alleged fraud turns upon whether the plaintiff possessed knowledge of facts from which he or she

---

[9] While these allegations are substantially the same in Plaintiff's first amended complaint and in her active complaint, Plaintiff did not allege that Chastan was the "director of Greensleeves" until her opposition to the active motion to dismiss; *see* Pl's Opp. at 17; as a result, the first motion-to-dismiss opinion found that these allegations stated a fraud claim against VP Records only.  *See* MTD I at 18.

could reasonably have inferred that fraud had occurred.  A plaintiff may not shut his or her eyes to

facts which call for investigation."  *Shannon v. Gordon*, 670 N.Y.S. 2d 887, 888 (2d Dep't 1998).  The

emails show that they were sent by Chastan from his "oc@vprecords.com" email address, and that

he used a signature block that listed his title as "VP Records Vice-President, International."  TAC

Ex. K.  These are facts that would cause a reasonably diligent person who did not want to sign an

additional agreement with VP Records to further inquire about the relationship between VP Records

and GPL; Plaintiff was not entitled to shut her eyes to these facts and wait over a decade to bring

her fraud claim.  As a result, this portion of Plaintiff's fraud claim is time-barred, and Defendants'

motion to dismiss Plaintiff's fraud claim is granted.[10]

### D.  Sixth Cause of Action:  Accounting

Plaintiff's sixth cause of action for accounting will also be dismissed because it is preempted

by the Copyright Act.  As the Court explained in the first motion-to-dismiss opinion, "'[t]he

Copyright Act exclusively governs a claim'—and non-Copyright Act claims are preempted—'when

(1) the particular work to which the claim is being applied falls within the type of works protected by

the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or

equitable rights that are equivalent to one of the bundle of exclusive rights already protected by

copyright law under 17 U.S.C. § 106.'"  MTD I at 10 (quoting *Universal Instruments Corp. v. Micro Sys.

Eng'g*, 924 F.3d 32, 48 (2d Cir. 2019)).  These two preemption-test prongs—the "subject matter" and

"general scope" requirements—are satisfied "when the plaintiff's claim applies to a work of

authorship fixed in a tangible medium of expression and falling within the ambit of one of the

---

[10] Plaintiff has asked the Court to "apply the doctrine of equitable estoppel to toll any statute of limitations argument" made by Defendants.  Pl's Opp. at 6.  But that doctrine is inapplicable to this claim for two reasons.  First, as described above in Part IV(B), Plaintiff has failed to adequately support her request for equitable estoppel as applied to any of her claims.  And second, because Plaintiff's estoppel-related allegations about the settlements between VP Records and McGregor have nothing to do with the Chastan's alleged fraud, equitable estoppel would not properly apply to this claim in any event.

categories of copyrightable works" and when "the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law," so long as there are not "any extra elements that make [the state-created right] qualitatively different from a copyright infringement claim."  MTD I at 10–11 (quoting *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 301 (2d Cir. 2022)); *see also Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) ("[The Second Circuit] take[s] a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim.").

Applying this standard, Plaintiff's accounting claim is preempted.  "To establish a claim for accounting under New York law, a party must establish '(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.'"  *Baiul v. NBC Sports*, No. 15-cv-9920, 2016 WL 1587250, at *10 (S.D.N.Y. Apr. 19, 2016) (quoting *Dayan Enters., Corp. v. Nautica Apparel, Inc.*, No. 03-cv-5706, 2003 WL 22832706, at *1 (S.D.N.Y. Nov. 26, 2003)).  And as numerous courts in this district have found, "claims for accounting based on the defendant's alleged misappropriation and exploitation of a copyright work are preempted by the Copyright Act."  *Id.*; *see Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 230–31 (S.D.N.Y. 2010) (dismissing an accounting claim as preempted by the Copyright Act); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 249 n.9 (S.D.N.Y. 2000) (same); *Weber v. Geffen Recs.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999) (same); *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1264 (S.D.N.Y. 1995) (same); *see also Baiul v. NBC Sports*, 708 F. App'x 710, 712–13 (2d Cir. Sept. 7, 2017) (summary order) (affirming the district-court decision in *Baiul* and noting that both the subject-matter and general-scope requirements of Copyright Act preemption are met when a state-law claim like accounting seeks to vindicate rights already protected by the Act for works that the Act covers).

Here, Plaintiff's complaint makes plain that the gravamen of her accounting claim is her allegation that Defendants are improperly misappropriating works for which she holds the copyright. *See* TAC ¶ 220 (alleging the works for which she holds a copyright); *id.* ¶¶ 221–230 (the rest of Plaintiff's accounting claim, explaining why—in her view—Defendants are required to account for profits and royalties connected to those works). And in her briefing, Plaintiff does not contest Defendants' preemption argument, only reiterating her belief that they failed to properly "render proper industry standard accounting statements." Pl's Opp. at 20.[11] But because Plaintiff's accounting claim is "based on [Defendants'] alleged misappropriation and exploitation of . . . copyrighted work[s]," it is "preempted by the Copyright Act" and the Court is obligated to dismiss it on that basis. *Baiul*, 2016 WL 1587250, at *10.[12]

## V.      LEAVE TO AMEND

Plaintiff is denied leave to further amend her complaint. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). But leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal citation omitted). Here, because the dismissed claims are either time-barred or preempted, it would be futile to permit further amendment of the complaint, as additional facts would not change the Court's decision to dismiss these claims. *See, e.g., Page v. Ellenoff Grossman & Schole LLP*, No. 22-cv-4453, 2023 WL 4841916

---

[11] In this section of her briefing, Plaintiff also argues that Defendant owed "a fiduciary duty" that is linked to her accounting claim. Pl's Opp. at 20. But for the reasons explained in this Court's prior motion-to-dismiss opinion, the facts presented in the complaint do not establish the existence of such a duty. *See* MTD I at 20–24.

[12] That Plaintiff's copyright claim is time-barred, *see supra* Part IV(B), does not alter the preemption analysis; a state-law claim may be preempted by a time-barred Copyright Act claim so long as the preemption test is otherwise satisfied. *See Weber*, 63 F. Supp. 2d at 464 ("No cause of action, whether or not brought under the Copyright Act, may be premised on a time-barred challenge to a copyright.").

(S.D.N.Y. July 28, 2023) ("Granting leave to amend in this case would be futile because, even assuming the facts set forth in the [complaint] and in [Plaintiff's] briefing, Plaintiff's claims are barred by the three-year statute of limitations."); *Manes v. JPMorgan Chase Bank, N.A.*, No. 20-cv-11059, 2022 WL 671631, at *9 (S.D.N.Y. Mar. 7, 2022) (denying leave to amend certain claims because they were "preempted; thus, no new material could render [them] viable").  So Plaintiff is denied leave to amend her complaint again.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 110 and to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated:  August 13, 2023
New York, New York

_____
GREGORY N. WOODS
United States District Judge