UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAUNA MCKENZIE-MORRIS,

                Plaintiff,

     v.

V.P. RECORDS RETAIL OUTLET, INC., V.P.
MUSIC GROUP, INC., V.P. RECORD
DISTRIBUTORS, LLC, V.P. RECORDS OF
BROOKLYN LLC, GREENSLEEVES
PUBLISHING, LTD and STB MUSIC INC.

                Defendants.

**Civil Action No.: 1:22-cv-01138-JGLC**

**DEFENDANTS' REPLY TO
PLAINTIFF'S COUNTER-
STATEMENT IN RESPONSE TO
DEFENDANTS' LOCAL RULE 56.1
STATEMENT IN SUPPORT OF
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1, Defendants set forth the following Reply in Response to Plaintiff's Counter-Statement in Response to Defendants' Local Rule 56.1 Statement in Support of Defendants' Motion for Partial Summary Judgment.

**DEFENDANTS' REPLY TO PLAINTIFF'S RULE 56.1 COUNTER-STATEMENT**

**Applicable Standards**:

Local Rule 56.1 requires the responding party to specifically controvert the material facts set forth in an opposing party's statement pursuant to Local Rule 56.1(a) with citations to evidence which would be admissible. Local Rule 56.1(b)-(d). The Southern District of New York adopted Local Rule 56.1(d) "to supply the Courts with an accurate factual record" and "to prohibit parties from taking . . . misleading and unfair 'shortcuts' (i.e., unsupported denials) . . ." *Omnipoint Commc'ns, Inc. v. City of White Plains*, 175 F.Supp. 2d 697, 700 (S.D.N.Y. 2001), *rev'd on other grounds*, 430 F.3d 529 (2d Cir. 2005). As such, a party's response pursuant to Local Rule 56.1(b)-(d) should not contain argument or narrative in an effort to evade, avoid or "spin" its inability to contest a fact with admissible evidence. *See, e.g., Goldstick v. The Hartford, Inc.*, 2002 WL

1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (plaintiff's Rule 56.1 Statement failed to comply with Rule 56.1 because plaintiffs "added argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006) ("'Rule 56.1 statements are not argument. They should contain factual assertions with citation to the record;" "plaintiffs cannot evade the impact of accepting a fact by adding legal argument to their counterstatements.") (cleaned up).

Rather than adhere to these requirements, Plaintiff regularly purports to "controvert" a fact, but, instead, raises matters that, instead of addressing the asserted fact, advance arguments and, thereby, avoids admitting facts that Plaintiff is unable to controvert. These responses do not create a material dispute, and courts should disregard them. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ("Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently."); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 314 (2d Cir. 2008) (responses that use the word "disputed" but do not demonstrate that dispute is genuine cannot defeat summary judgment); *Omnipoint Comm'ns*, 175 F.Supp. 2d at 700 (same); *Watt v. N.Y. Botanical Garden*, No. 98 Civ. 1095 (BSJ), 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000) (same). A recent decision from a Court in this District stated the standard this way:

> [B]ald and conclusory factual statements contained [in Plaintiff's papers] do not constitute opposition to Defendants' Rule 56.1 statements. *See Woods v. Acampora*, No. 08-CV-4854, 2009 WL 1835881, at *3 (S.D.N.Y. June 24, 2009) ("[A] pro se party's 'bald assertion' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Odom v. Keane*, 1997 WL 576088, at *3 (S.D.N.Y. Sept.17, 1997))).

*King v. Shinder*, 2020 WL 4750294, at *2 n.2 (S.D.N.Y. Aug. 17, 2020) (granting Defendants'

motion for summary judgment against *pro se* plaintiff).

Based on the foregoing precedent, Defendants submit that the Court should disregard

Plaintiff's Responses to Defendants' Rule 56.1 Statement of Material Facts that advance

arguments, are not based upon citations to admissible evidence, and/or fail to address and

controvert the Statement of Fact to which the Response purports to respond.

**Defendants' Reply to Plaintiff's Responses to Defendants' Statement of Material Facts**
**Pursuant to Local Rule 56.1**:

Defendants' point-by-point reply to Plaintiff's Responses to Defendants' Statement of

Material Facts Pursuant to Local Rule 56.1 [DE 202 at pp. 5-36] demonstrates her repeated failure

to controvert the material facts underlying Defendants' partial motion for summary judgment.[1]

**Defendants' Statement of Material Fact No. 1**:

1. **Plaintiff and VP Music Group, Inc. ("VP Music") entered into a Recording**
   **agreement made as of May 1, 2007 ("2007 Recording Agreement").** *See*
   **Stewart Decl., ¶ 4 and Exhibit 1 thereto.**

**Disputed:  Plaintiff's Response to Paragraph No. 1**:

*1.    The defendant's summary judgement is based upon the term of the 2007 recording*
*agreement and backdated 2007 publishing agreement which does not apply to the master*
*sound recordings in question, thus the defendant's motion for summary judgement should*
*be denied. Based on the stated facts herein, the defendants sole claim is royalty-based and*
*based on an "incontestability clause" which defendants uses to contest that plaintiff did*
*not respond nor found issue with "2019" Royalty statements.*

**DEFENDANTS' REPLY:**

Plaintiff's Response does not controvert this Statement of Material Fact.  Instead, Plaintiff raises
a non-responsive legal argument that not only fails for the reasons set forth in Defendants'
Memorandum of Law in support of the motion for summary judgment ("**Defendants' MOL**") [DE

---

[1] The Material Facts in Defendants' Rule 56.1 Statement [DE 169] are set forth herein in **bold**.
Plaintiff's Responses to the Statements in Defendants' Rule 56.1 Statement [DE 202] are then set forth
herein in *italics*.  Finally, Defendants' Reply to Plaintiff's Responses are set forth in blue font without
any emphasis.

172] and Defendants' Reply Memorandum of Law ("**Defendants' Reply MOL**"), but also should be disregarded under the precedent cited at pages 1-3 above.

Further, Plaintiff's references here and elsewhere in her Response to the agreements between her and Defendants as "backdated" is a baseless distraction. The Court has rejected her "back-dating" challenge to the agreements. *See* DE 75 at 18-19; DE 123 at 17.

**Defendants' Statement of Material Fact No. 2**:

2.    Under Section 8.1 of the 2007 Recording Agreement, VP Music was to issue royalty accountings (i.e., royalty statements) on a bi-annual basis as follows:

Accountings as to royalties accruing or which otherwise would have accrued hereunder shall be made by Company [VP Music Group, Inc.] to Artist [Plaintiff] on or before September 30th for the period ending the preceding June 30th, and on or before March 31st for the period ending the preceding December 31st, or such other accounting periods as Company [VP Music Group, Inc.] may in general adopt, but in no case less frequently than semi-annually, together with payment of accrued royalties, if any, earned by Artist [Plaintiff] during such preceding half-year, less Advances or other non-recouped recoupable and/or deductible amounts hereunder. Company shall have the right to hold reasonable reserves in respect of sales hereunder, which reserves shall be fully liquidated over the next four (4) subsequent accounting periods.

*See* Stewart Decl., ¶ 5 and Exhibit 1 thereto; *see also* Plaintiff's Third Amended Complaint [ECF No. 101] ("TAC"), ¶ 56 and Exhibit G thereto.

**Disputed: Plaintiff's Response to Paragraph No. 2**:

*1.    Plaintiff's breach of contract does not solely rely on Royalty statement provided under section 8. The breach of contract claims in the TAC pursue damages for the breach of Clause 4.1 – 4.3 of the 2007 recording agreement among other breaches in the said 2007 agreement and in the back- dated 2007 publishing agreement.*

*2.    4. DELIVERY PROCEDURE (2007 RECORDING EXCERPT)*

*4.3 All Master Recordings delivered hereunder, excluding those to be Delivered during the Initial Period, shall be recorded no earlier than six (6) months prior to delivery to Company and shall not embody Compositions which have previously been recorded by Artist (whether as a group or an individual). Artist shall not commence recording any Album prior to ninety (90) days after delivery to Company of Master Recordings constituting the immediately preceding Album.*

*The following listed master sound recordings below were exploited by the defendants on the "Strong One" album and the "Free Expressions" album. The defendants were NOT permitted exploit the titles in question due to them being recorded one or two years prior to plaintiff entering into the 2007 recording agreement. These master sound recordings*

*below are NOT governed by the clauses of the 2007 Recording agreement and yet defendants charged artist royalty account for alleged payments made for master sound recordings they did not actually pay.*

*The song titles in question are the titles below:*

*The Strong One Album*

*(a) I am Not Afraid, (b) Roots, (c) Wrong Address, (d) Jah Chariot, (e) Live and Love Life (f)Nuclear, (g) Don't Forget*

*Free Expressions Album*

*(a) Free, (b) I know you Love Me, (c) Happy Heart, (d) Mockingbird, and any derivatives of these titles.*

*Any statement rendered under the terms of the 2007 recording agreement for the listed titles above, would automatically be incorrect because the terms used to calculate the royalties of the uncontracted songs are not applicable. There are no terms. Plaintiff requested producer agreements and proof of payments for the master sound recordings improperly procured on "The Strong One Album" and the defendants did not provide any binding producer agreement between any of the music producers and master sound recording rights owners of the titles above and V.P Music Group Inc. for both the Strong One album and Free expressions album.*

*Herein attached as **"Exhibit H"**, A licensing agreement between **Greensleeves Records Limited** and **Shauna McKenzie of "Bess" Records** was provided by the defendants during discovery, supposedly for the use of the song entitled "Roots" to be used/exploited on the compilation album **"Biggest Reggae One Drop Anthem"**. For the avoidance of doubt, a compilation album is an album that includes various artists.*

*Though plaintiff denies the validity of this stated contract presented by the defendants, the contract provides evidence to support plaintiffs' argument that:*

- *The Defendants improperly procured the song entitled "roots" to the "The Strong One album".*

- *The defendants do not own the master sound recording as they have registered with the copyright office.*

- *The defendants do not have any valid agreement for the use and exploitation of the song" roots" on the "Strong One" album or any other albums released by the defendants that includes the title.*

- <u>*Liner Notes of the Biggest Reggae One Drop*</u>

- *On the liner notes of the Biggest Reggae One Drop album, the defendants wrote, Shauna McKenzie, Copyright Control. Which means that the defendants did not*

*own plaintiff's copyright. Nor did defendants have the right to register the work as 100% transfer through written agreement as they did in the copyright office. This liner notes is also not concurrent with the defendants fraudulent contract.*

*<u>Written amount paid on Fraudulent Agreement for The Biggest Reggae One Drop Anthem album.</u>*

- *The amount paid on the fraudulent agreement reflects $2500, yet the stated amount was not reflected on the first statement, or any statement ever sent by Greensleeves.*

- *The contract itself provides no address for Shauna McKenzie of Bess Records.*

- *Shauna McKenzie also has no ties, connection, or affiliation with a "Bess Records".*

- *Proof of payment was requested from the defendants and the defendants objected.*

*Herein attached as **"Exhibit I"**, The Defendants provided a license agreement in the discovery process, allegedly, by and between Fifth Element Music Inc. and V.P Music Group for the exploitation of "Wrong Address" for the compilations Strictly the Best 35 & 36. The defendants fraudulently attained master sound recording through a source that is not the owner of the master sound recording nor producer of the work. Under Clause 2(f) of the fraudulent licensing agreement, it states that Licensee is responsible for providing agreements from songwriters, and producers of the title. Plaintiff has requested copies of such agreements that were deemed necessary for the defendants to conclude its due diligence and ensure the proper ownership prior to creating an agreement, and prior to the sale, transfer or License of the rights of other individuals outside of said negotiations and agreement. Defendants have objected and refused to provide such documents. Defendants were also asked who the signatory of the agreement was, and defendants objected. In addition, the liner notes on the Strong One album also does not align with the license contract the defendants presented. The defendants have no binding agreement to exploit the song title "wrong address" on the album "The Strong One". Plaintiff denies knowledge of this agreement or the affiliation of signatory of the said agreement. This agreement also shows that plaintiff did not deliver the master sound recording wrong address as previously stated by the defendants. Plaintiff repeats that the 2007 Recording agreement does not apply to any of the sound recording masters disputed.*

## **DEFENDANTS' REPLY:**

<u>Plaintiff's response does not controvert this Statement of Material Fact</u>.  Nor could it, because this Fact only quotes Par. 8.1 of the 2007 Recording Agreement (which Plaintiff also quoted in Par. 56 of the Third Amended Complaint ("**TAC**")).  Instead, Plaintiff "responds" with two pages of non-responsive argument that should be disregarded under the precedent cited at pages 1-3 above.

Moreover, the arguments in Plaintiff's lengthy non-responsive "Response", which do not address the statute of limitations or "incontestability clause" bases of Defendants' Motion, fail for the reasons set forth in Defendants' MOL and Defendants' Reply MOL and because they are self-contradicting as well as being, in various instances, unsupported by admissible evidence.

Without undertaking to respond to all of Plaintiff's arguments here, the following are two examples of Plaintiff's flawed stance. <u>First</u>, Plaintiff's assertion that the agreement she cites ([DE 202-8]) limited the use of "Roots" to a compilation album entitled "Biggest Reggae One Drop Album" is contradicted by the agreement she cites. The agreement neither refers to that album nor imposes such a limitation (*see, e.g.*, Grant of Rights in Par. 2 of such agreement [DE 202-8 at p. 12 of 18]). <u>Second</u>, Plaintiff's assertion that liner notes on the compilation album "means that defendants did not own plaintiff's copyright" [DE 202 at p. 10 of 37] is inadmissible because the "liner notes" are not included in Plaintiff's opposition. Moreover, her argument fails and is a baseless distraction because, without limitation, the Court rejected and dismissed Plaintiff's copyright ownership claim with respect to "Roots" and all of the other so-called "uncontracted songs." *See* DE 123 at 6, 13.

**Defendants' Statement of Material Fact No. 3:**

3.     Section 8.3 of the 2007 Recording Agreement further provides:

**All royalty statements rendered by Company [VP Music Group, Inc.] to Artist [Plaintiff] shall be binding upon Artist [Plaintiff] and are not subject to any objections by Artist for any reason unless specific objection in writing, stating the basis thereof, is given to Company within two (2) years from the date due. Failure to make such specific objection within said time period shall be deemed an irrevocable approval of such statement.**

**Disputed:  Plaintiff's Response to Paragraph No. 3:**

*3.     Plaintiff refutes defendants' paragraph 3 and reasserts that the 2007 Recording agreement does not apply to any of the sound recording masters disputed, and no term in the stated contract governs the disputed titles.*

*Section 18.5 of the 2007 Recording agreement states.*

*18.5 All notices required to be given to Company shall be sent to Company at its address first mentioned herein, and all royalties, royalty statements and payments and any and all notices to Artist shall be sent to Artist at its address first mentioned herein, or such other address as each party respectively may hereafter designate by notice in writing to the other. All notices sent under this Agreement shall be in writing and, except for royalty statements, shall be sent by registered or certified mail, return receipt requested, and the day of mailing of any such notice shall be deemed the date of the giving thereof (except notices of change of address, the date of which shall be the date of receipt by the receiving party). Copies of all notices shall be sent, if by Artist, to Jay Quatrini, Esq., 41 Madison Avenue, 34th Floor, New York, New York 10010, and, if by Company, to the address first set forth above and to Solid Agency at 11Merrivale Close, Kingston 8, Jamaica, West Indies. Any failure to send the aforementioned courtesy copies shall not be deemed a material failure under the within clause.*

*Plaintiff responded to more than two emails in which the plaintiff was directed to join or sign up for a royalty share portal. Plaintiff rejected to sign up for such portal on October 24, 2018, and again on July 23, 2019 (herein as **"Exhibit J"**), which is more than three*

*months before the abovementioned statement notice email was sent by the defendants Royalty department. Plaintiff told the defendants she did not want to log into the portal and preferred to receive her statements by email. Furthermore, on April 26th, 2018 plaintiff received an email from Defendants royalty department acknowledging they noticed that plaintiff had not registered or logged in. See all three Emails, herein attached as "Exhibit J". Nowhere in the 2007 recording agreement is plaintiff obligated to sign into a portal and plaintiff did not receive any statements from defendants by mail or email after such rejection.*

**DEFENDANTS' REPLY:**

<u>Plaintiff's response does not controvert this Statement of Material Fact</u>.  Nor could it because this Fact only quotes Par. 8.3 from the 2007 Recording Agreement.  Instead, Plaintiff "responds" with non-responsive argument that should be disregarded under the precedent cited at pages 1-3 above.

Further, Plaintiff's quotation of Par. 18.5 from the 2007 Recording Agreement in support of her argument that royalty statements were not sent to her in accordance with Par. 18.5 is not just non-responsive, but also, as discussed in Defendants' Reply MOL, legally and factually deficient under New York law and under the 2007 Recording Agreement's Incontestability Clause, which required Plaintiff to file suit within two years of the "due date" for payment or submission of royalty statements containing information to which she specifically objected in writing.[2]

**Defendants' Statement of Material Fact No. 3 [sic; this is No. 3, not No. 4)]:** [2]

4.    **Section 8.3 of the 2007 Recording Agreement further provides:**

**All royalty statements rendered by Company [VP Music Group, Inc.] to Artist [Plaintiff] shall be binding upon Artist [Plaintiff] and are not subject to any objections by Artist for any reason unless specific objection in writing, stating the basis thereof, is given to Company within two (2) years from the date due. Failure to make such specific objection within said time period shall be deemed an irrevocable approval of such statement.**

**<u>Disputed:  Plaintiff's Response to Paragraph No. 4 [sic; as noted in FN 2, Plaintiff's Response actually is to Rule 56.1 Statement of Fact No. 3]</u>:**

*Plaintiff restates that the sound recordings, in whole, do not fall under the 2007 recording agreement and thus is not governed by any clauses mentioned or cited by the defendant in their motion for summary judgment and thus the defendant's motion should be denied.*

*In Regard to (VH1 Royalty Statement 2019) plaintiff has objected on multiple occasion to the royalty statements dating back as early as 2015 with a continuation of said dispute through 2021 which has ultimately led to this litigation. Please see* ***"Exhibit K"***, *Declaration from plaintiff's manager Andre Morris which details the email communication*

---

[2] Plaintiff's Response mistakenly lists Defendants' Statement No. 3 twice, referring to it once as No. 3 and then, here, as No. 4.  Plaintiff asserts additional arguments – not facts to controvert Statement No. 3 – in this misnumbered response.

*between then Royalty department director Junady Tavares, Weiner, and Business Affairs John McQueeny. There is a consistent timeline of objections where multiple disputes were raised regarding miscalculation of royalties and the misuse of the titles in questions and other royalty discrepancies. The defendants mentioned in point #4 Royalty Statement (the "**VP 1H 2019 Statement**") which he uses to support his argument of incontestability, however plaintiff's disputes supersede that date as our discrepancy's disputes began even prior to (the "**VP 1H 2017 Statement**"), during which Plaintiff's manager emailed director of Royalty Juandy Tavares requesting clarification on the statement. There was no response or resolution provided by Ms. Tavares on that email.*

**DEFENDANTS' REPLY:**

Plaintiff's response does not controvert this Statement of Material Fact. Nor could it, because, as explained above, this Fact only quotes Par. 8.3 from the 2007 Recording Agreement.  Instead, Plaintiff "responds" with non-responsive argument that should be disregarded under the precedent cited at pages 1-3 above.

Moreover, the reference to "Exhibit K" [DE 202-11], which Plaintiff identifies as a Declaration from her manager, Andre Morris, does not raise a genuine disputed issue of material of fact on this point.  Moreover, the Declaration is not admissible because it does not include language required under 28 U.S.C. § 1746.  Further, as shown in Defendants' Reply MOL (pages 6, 10-11), the referenced emails do not overcome the requirements of either Section 8.3 or Section 8.5 of the 2007 Recording Agreement (or, for that matter, New York's statute of limitation bar).

**Defendants' Statement of Material Fact No. 5 [sic; this is No. 4, not No. 5)]**:[3]

       ***See*** Stewart Decl., ¶ 6 and Exhibit 1 thereto; *see also* **Exhibit G to TAC.**

       **5.**      **Section 8.5 of the 2007 Recording Agreement further provides:**

       **Artist [Plaintiff] will not have the right to bring an action against Company [VP Music Group, Inc.] in connection with any royalty accounting or payments hereunder unless Artist [Plaintiff] commences the suit within two (2) years from the date such statement of accounting for royalties or such payment was due.**

       ***See*** Stewart Decl., ¶ 7 and Exhibit 1 thereto; *see also* **Exhibit G to TAC.**

**Disputed:  Plaintiff's Response to Paragraph No. 5 [sic; as noted in FN 3, Plaintiff's Response actually is to Rule 56.1 Statement of Fact No. 4]**:

-     *Defendants claim in their statement above that more than two (2) years passed prior to any royalty or payment dispute. However, there are several unanswered disputing emails from plaintiff's manager:*

-     *February 14th, 2017, disputing Greensleeves 2016 royalty statement*

---

[3] Plaintiff's Response mistakenly refers to Defendants' Statement No. 4 as No. 5.

- *August 7, 2019, **an email disputing the recording statement for 2019 referenced defendants in point #4.***

- *November 20, 2020, email to Weiner from Plaintiff previous attorneys disputing royalties and publishing administration.*

- *December 30, 2020, cease and desist letter.*

- *February 11, 2021, was plaintiff's final dispute communication prior to the complaint being filed eleven (11) months later January 1, 2022.*

*Please see declaration from plaintiff's manager Andre Morris, herein as (**Exhibit K**). The Defendants assertions that there are no disputed facts are incorrect. Plaintiff has been in an ongoing dispute regarding royalty statements, copyright infringements and publishing administration, which ultimately led to the filing of this complaint see "**Exhibits K and G")**.*

**DEFENDANTS' REPLY:**

<u>Plaintiff's response does not controvert this Statement of Material Fact</u>.  Nor could it, because, as explained above, this Fact only quotes Par. 8.5 from the 2007 Recording Agreement.  Instead, Plaintiff again "responds" with non-responsive arguments that should be disregarded under the precedent cited at pages 1-3 above.

Moreover, Plaintiff's reference to alleged communications is non-responsive.  Further, the emails from February 2017 and November 2020 are irrelevant here as they concern Greensleeves, not VP Records Group or the 2007 Recording Agreement.  The August 7, 2019 email is also irrelevant.  It does not set forth "specific written objections" and, instead, sets forth Plaintiff's Manager's (Andre Morris's) erroneous and inadmissible assertion that the "I Rise" album was under a November 2014 record deal and not the 2007 Recording Agreement.  (*See* DE 200-7.)  Consistent with VP Records' correction of Mr. Morris's assertion (*id.*), Plaintiff's admissions in the TAC also contradict Mr. Morris's inadmissible assertion (*see, e.g.*, TAC, ¶¶ 55, 68 [admitting "I Rise" was the fourth album under the 2007 Recording Agreement]).  Finally, the references to a December 30, 2020 letter and a February 11, 2021 communication are both inadmissible, as neither such alleged document is included in Plaintiff's opposition, and there is no basis to credit these hearsay, non-best evidence, self-serving assertions.

**Defendants' Statement of Material Facts No. 5 – 15**:

5.  **Under Section 8.1 of the 2007 Recording Agreement, the royalty statement covering the period from January - June 2019 (the "VP 1H 2019 Statement") was due on or before September 30, 2019.** *See* **Stewart Decl., ¶ 8 and Exhibit 2 thereto.**

6.  **The VP 1H 2019 Royalty Statement sets forth that for the royalty period ending in June 2019, the "ending balance" was $ -220,123.74.** *See* **Stewart Decl., ¶ 9 and Exhibit 2 thereto, p. 1.**

2

7.      The "ending balance" refers to Plaintiff's unrecouped royalty account under the 2007 Recording Agreement. *See* Stewart Decl., ¶ 9 and Exhibit 2 thereto, p. 1.

8.      As reflected in Section 8.1, royalties are not due to Plaintiff under the 2007 Recording Agreement until her royalty account is fully recouped. *See* Stewart Decl., ¶ 9 and Exhibit 1 thereto, § 8.1.

9.      In the two years following the due date of the VP 1H 2019 Statement, VP Music did not receive from Plaintiff any specific written objections to the statement setting forth the basis for such objections. *See* Stewart Decl., ¶ 10.

10.     Further, Plaintiff did not file a lawsuit claiming breach of the 2007 Recording Agreement within two years of the due date of the VP 1H 2019 Statement, and more than two years has elapsed from the due date of the VP 1H 2019 Statement and Plaintiff's commencement of this lawsuit in January 2022. *See* Stewart Decl., ¶ 11.

11.     The first royalty statement due under the 2007 Recording Agreement after January 7, 2020 was for the period from July - December 2019, which statement was due on or before March 31, 2020 (the "VP 2H 2019 Statement"). *See* Stewart Decl., ¶ 12 and Exhibit 3 thereto.

12.     In the VP 2H 2019 Statement, the "previous period balance" is taken from and is the same number set forth in the VP 1H 2019 Statement as the "ending balance", i.e.: $ 220,123.74. *See* Stewart Decl., ¶ 13 and Exhibit 3 thereto, p. 1.

13.     After setting forth the "previous period balance," the VP 2H 2019 Statement then sets forth the royalties and expenses reported during the 6-month period covered in the VP 2H 2019 Statement. *See* Stewart Decl., ¶ 13 and Exhibit 3 thereto, p. 1.

14.     Thereafter, the VP 2H 2019 Statement reports as the "ending balance" $ - 218,617.45 (reflecting a slight decrease in the amount by which Plaintiff's royalty account was unrecouped from the prior royalty accounting period). *See* Stewart Decl., ¶ 13 and Exhibit 3 thereto, p. 1.

15.     Accordingly, the "ending balance" number on the VP 2H 2019 Statement is directly derived from the "ending balance" number on the VP 1H 2019 Statement, with the only differences relating to activities reported *after* the period covered in the VP 1H 2019 Statement ended. *See* Stewart Decl., ¶ 13 and Exhibit 3 thereto, p. 1.

**Disputed:  Plaintiff's Response to Paragraphs Nos.  6 – 15 [sic; as noted in FN 4, Plaintiff's Response actually is to Rule 56.1 Statement of Fact Nos. 5 – 15)]:** [4]

> *The Royalty statements mentioned in the defendant's argument are predicated on expenses that has been falsified from the inception of the agreement through the addition of charges said to be paid to producers to produce songs that were never composed under the terms of the 2007 recording agreement. Plaintiff has always contended openly in writing to the representatives of the defendants that the statements are incorrect. During this discovery phase evidence displays additional miscalculations of sales data on various albums, for instance- 1H2013 and 2H2013 royalty statements lists the incomes earned from (The Strong One album totaled $1145.90, Free Expressions totaled $1710.80 and Better Tomorrow totaled $3117.60) Total royalty income for product sales for all three albums in 2013 was said to be $5974.30. However according to a Neilson Soundscan sales report sent to Plaintiff's manager, Andre Morris, by defendants Vice President of Sales and marketing, Aaron Talbert, on June 15th, 2015, see (**Exhibit L**), The Year-to-date sales in units in the United Stated/Canada for (Better Tomorrow was 2108 units , Free Expression 271 units and The Strong One 450 units) During that year, Etana's albums were being sold at the above market norm of $9.99. The Defendants listed The Strong One for sale at $14.99, Free Expressions at $11.99 and Better Tomorrow at $12.99 but for the avoidance of doubt, plaintiff uses the now industry standard of $9.99 for 1 album sold. The estimated calculations are (Better Tomorrow 2108 x $9.99 = $21,058.92, Free Expression 271 x $9.99 =$2707.29, The Strong One 450 x $9.99 = $4,495.50. Total sales as per the Neilson Soundscan received from Aaron Talbert during in 2013 in USA/Canada grossed an estimated $28,261.71. A copy of the Soundscan report is attached as **"Exhibit L"** which shows as of June 2015 the total albums sold released to date in the United States and Canada was 17544 units which at the estimated low rate of $9.99, the defendants would have earned $175,264.56 in the United States and Canada only.*

## DEFENDANTS' REPLY:

Plaintiff's response does not controvert these Statements of Material Fact.  Instead, Plaintiff continues to "respond" with non-responsive arguments that should be disregarded under the precedent cited at pages 1-3 above.

Plaintiff's self-serving assertion that Defendants' falsified expenses "since the inception of the agreement" and her claim that she "always contended openly in writing to the representatives of the defendants that the statements were incorrect," are not admissible and are not supported by her opposition to the Motion.  The only document she refers to in her response to this Statement of Material Fact is documentation she alleges she received from Defendants in 2015, including royalty statements from 2013 showing she had a negative balance of -$156,299.70 [DE 202-12 at p. 8].  But she provides no admissible evidence to show that she contested these royalty statements.

Moreover, contrary to Plaintiff's inadmissible statement that she "always contended openly in writing to representatives of the defendants that the statements were incorrect,", none of the communications included in Plaintiff's opposition papers constitute "specific written objection,

---

[4] Plaintiff's Response mistakenly refers to Defendants' Statement No. 5 as No. 6.

stating the basis thereof," as required under the Incontestability Clauses. *See* Declaration of Philip Langer, executed January 23, 2024 (submitted herewith).

**Defendants' Statement of Material Fact No. 16 – 17:**

16.    "The Strong One" is the first of four albums that VP Music released under the 2007 Recording Agreement. VP Music released it on or about June 17, 2008. *See* **Stewart Decl., ¶ 14;** *see also* **TAC, ¶ 58.**

17.    "The Strong One" album contains 16 recordings: (1) Don't Forget, (2) Roots, (3) Jah Chariot, (4) I Am Not Afraid, (5) Nothing But Love, (6) Caltariba System, (7) More & More, (8) Blessing, (9) I'll Be The One, (10) Warrior Love, (11) Wasting My Time, (12) Closer, (13) Overcome, (14) Live & Love Life, (15) Wrong Address, and (16) Nuclear. See Stewart Decl., ¶ 15; *see also* **Exhibit J to TAC, DE 103-1, pp. 56-57 (album liner notes listing recordings on "The Strong One").**

**Disputed:  Plaintiff's Response to Paragraph Nos. 16-17:**

*Based on the clause 4.1 through 4.4, the defendants were in breach when they added the titles that were composed more than a year prior to the plaintiff signing any agreement with the defendants:*

*(15) Wrong address, (2) Roots, (14) Live and Love Life, (3) Jah Chariot, (16) Nuclear, (1) Don't Forget and (4)I am not Afraid.*

*Defendants improperly attained more than half (7/16) of the number of tracks on the Strong One album and exploited property illegally enriching themselves for more than 17 years **and continues to do so to date**. The Defendants were sued by the co-creator of "I am not Afraid" and several other titles created by Kemar Mcgregor and Plaintiff. The defendants paid a settlement payment for McGregor's share of the rights in the titles in 2014 and 2018. Plaintiff rights to "I am Not Afraid" and in all other titles created by plaintiff and Kemar McGregor were reserved in such settlements. It was only in 2014 and 2018 that the defendants received the right to use only Kemar McGregor's Share in the title for exploitation on the Strong One album and Free Expressions. No notice was ever sent by the defendants regarding the reservations of such rights in the matter. The defendants had no rights to exploit the master sound recordings in dispute nor to register the copyright of "The Strong One album" claiming 100% ownership. The damages caused by the defendants are extraneous and the defendants continue to collect monies illegally to date. The defendants acknowledged through the liner notes the ownership of the sound recordings and are aware the song titles were not created under the terms of the recording agreement. **(See Exhibit M- Liner notes of the Album the Strong One)**.*

**DEFENDANTS' REPLY:**

Plaintiff's response does not controvert these Statements of Material Fact.  Nor could it because Plaintiff admits these Facts, as the citations in Defendants' Rule 56.1 Statement Nos. 16-17 reflect.

Instead, Plaintiff "responds" with non-responsive argument that should be disregarded under the precedent cited at pages 1-3 above.

Moreover, Plaintiff argues that Defendants breached Sections 4.1 to 4.4 of the 2007 Recording Agreement by including seven of the so-called "uncontracted songs" on "The Strong One" album. However, even if this were true, as discussed in Defendants' MOL and Reply MOL, this still would not constitute a genuine issue of material fact because Defendants' motion for summary judgment with respect to this alleged breach claim is based upon the expiration of the statute of limitations.

Plaintiff's reference to settlement agreements between Defendants and Kemar McGregor from 2014 and 2018, and her submission of the vitriolic Kemar McGregor Declaration [DE 202-3], which is filled with inadmissible "evidence" and is, itself, inadmissible because it does not comply with 28 U.S.C. § 1746, is a transparent effort to mud-sling and distract.  Moreover, illustrative of the lack of credibility of Mr. McGregor's "declaration," is his characterization of a hearing before Magistrate Judge Lois Bloom in the United States District Court for the Eastern District of New York on February 9, 2023.  According to the McGregor "Declaration," Judge Bloom's "interpretation of the 2014 and 2018 settlement agreement was that the only interest that was transferred to VP Records was the McGregor interest" (*see* DE 202-3 at 5 of 65), citing Exhibit F to his "declaration" (*i.e.*, the February 9, 2023 court transcript).  In point of fact, the Court transcript expressly refutes Mr. McGregor's assertion and shows that Judge Bloom was (correctly) concerned that Mr. McGregor would attempt to misrepresent the statements that Judge Bloom' made during the conference.  *See* DE 202-3 at page 55-56 of 65 (Tr. at 31:21-32:10).

**Defendants' Statement of Material Fact No. 18-19:**

18. **"Free Expressions" is the second of four albums that VP Music released under the 2007 Recording Agreement. VP Music released it on or about February 8, 2011. *See* Stewart Decl., ¶ 16; *see also* TAC, ¶ 61.**

19. **The "Free Expressions" album contains 15 recordings: (1) Free, (2) Mocking Bird, (3) People Talk, (4) Heart Broken, (5) I Know You Love Me, (6) I Got You, (7) Happy Heart, (8) My Name Is, (9) Moving On, (10) War, (11) Retribution, (12) August Town, (13) Venting, (14)Day By Day, and (15) Dance. See Stewart Decl., ¶ 17; see also Exhibit J to TAC, DE 103-1, pp. 61-62 (album liner notes listing recordings on "Free Expressions").**

**Disputed:  Plaintiff's Response to Paragraph Nos. 18-19:**

*Defendants* [sic] *repleads that on the clause 4.1 through 4.4 the defendants were in breach when they added the titles that were composed up to two years prior to the plaintiff signing any agreement with the defendants and more than 4 years prior to the release of the Free Expressions album: Free, I know You Love Me, Mockingbird and Happy Heart. Defendants improperly attained and exploited property illegally enriching themselves for more than 17 years and continues to exploit the titles illegally to date.*

**DEFENDANTS' REPLY:**

<u>Plaintiff's response does not controvert these Statements of Material Fact</u>.  Nor could it because these Facts are expressly admitted in Plaintiff's Complaint, as the citations in Defendants' Rule 56.1 Statement Nos. 16-17 reflect.  Instead, Plaintiff "responds" with non-responsive argument that should be disregarded under the precedent cited at pages 1-3 above.

Moreover, she merely repeats her non-responsive claim that Defendants' inclusion of four works on the "Free Expressions" album was in breach of Sections 4.1 to 4.4 of the 2007 Recording Agreement.  As noted above, even if this were true – and Defendants deny it is – as discussed above and in Defendants' MOL and Reply MOL, this still would not constitute a genuine issue of material fact because Defendants' motion for summary judgment with respect to this alleged breach claim is based upon the expiration of the statute of limitations.

**<u>Defendants' Statement of Material Fact Nos. 20-21</u>:**

20.     **Plaintiff and GPL entered into a Songwriter Agreement made as of December 1, 2007 ("2007 Songwriter Agreement").** *See* **Weiner Decl., ¶ 4 and Exhibit 1 thereto.**

21.     **Under Section 8 of the 2007 Songwriter Agreement, GPL was to issue Plaintiff royalty statements on a semi-annual basis as follows:**

**Publisher [GPL] shall compute the royalties earned by Writer [Plaintiff] pursuant to this Agreement and pursuant to any other agreement between Writer [Plaintiff] and Publisher [GPL] or its affiliates, whether now in existence or entered into at any subsequent hereto, on or before March 31st for the semi-annual period ending the preceding December 31st and on or before September 30th for the semi-annual period ending the preceding June 30th, and shall thereupon submit to Writer [Plaintiff] the royalty statement for each such period together with the net amount of royalties, if any, which shall be payable after deducting any and all unrecouped advances and chargeable costs permitted under this Agreement or any such other agreement.**

**<u>Disputed:  Plaintiff's Response to Paragraph Nos. 20-21</u>:**

*1.      Plaintiff re-asserts that no title being disputed is governed by the 2007 recording agreement or the back dated publishing agreement with an entered into date of December 1, 2007.*

*2.      The 2007 Greensleeves publishing agreement is ambiguous does not state its clauses explicitly regarding the ownership, employment and grants of rights. The agreement was signed in November of 2008 and backdated with a "entered into date of December 1, 2007. The said publishing agreement was created by and between Greensleeves Publishing limited of Unit 14, Metro Centre, St. Johns Road, Middle Sex, TW76NJ, United Kingdom and Shauna McKenzie under the laws of the United Kingdom.*

*The employment clause states:*

*Publisher herby employs writer to render writers' services as a songwriter and composer and otherwise as may hereinafter be set forth. Writer hereby accepts such employment and agrees to render services exclusively for publisher during the "term" hereof, upon the terms and conditions set forth herein.*

*The term of the publishing agreement commences as of December 1, 2007, and continue for five years.*

For and in consideration of the mutual covenants herein set forth, the parties hereby agree as follows:

1.  **EMPLOYMENT**

    Publisher hereby employs Writer to render Writer's services as a songwriter and composer and otherwise as may hereinafter be set forth. Writer hereby accepts such employment and agrees to render such services exclusively for Publisher during the Term hereof, upon the terms and conditions set forth herein.

2.  **TERM**

    The initial term of this Agreement shall commence as of the date hereof and shall continue for a term of five (5) years ("Term").

3.  **GRANT OF RIGHTS**

3.  **GRANT OF RIGHTS**

    3.1    Writer hereby irrevocably and absolutely assigns, conveys and grants to Publisher, its successors and assigns:

    (a)    all rights and interests of every kind, nature and description in and to all original musical Compositions and all original arrangements of musical compositions in the public domain which have heretofore been written, composed or created by Writer, in whole or in part, alone or in collaboration with others, including but not limited to the titles, lyrics and music thereof and all world-wide copyrights and renewals and extensions thereof under any present or future laws throughout the world, to the extent any of the foregoing shall not heretofore have been conveyed by Writer to an unrelated third party; and

*This publishing agreement was signed in November of 2008. The term of the agreement was backdated to commence dec. 1, 2007. Based on the accumulation and review of evidence received during discovery, It appears the defendants attempted to capture songs already conveyed and published by Free Minds Publishing as there were no agreement between plaintiff and Greensleeves or STB music at the time of the release of "The Strong One Album" (see Liner exhibit M). The final line in (3.a) states: "the extent any of the foregoing shall not heretofore have been conveyed by writer to an unrelated third party".*

*On the liner notes of the album, the Strong One, Defendants credited the producers and publishers of the works accurately acknowledging they are aware they, the defendants, are not the owner of the works nor the publisher of such works. However, despite their acknowledgment on their own liner notes the defendants still fraudulently registered the work as 100% owned and listed all work as "work for hire" transfer through written agreement in the copyright office and claimed performance and mechanical royalties through the Performance Rights Organizations making any statements the defendants provide incorrect.*

*Prior to the release of the album the "Strong One Album" plaintiff rejected a publishing agreement from STB on May 13th, 2008. Following the rejection, Alex Thredgold, business affairs attorney for the defendants, threatened to register the copyright of the titles on the album as STB Music Inc, as the publisher. Plaintiff has no agreement with STB music inc. nor does Free Minds Music publishing have any agreement with STB Music Inc (**see Exhibit N**).*

*The defendants also released the songs created by the plaintiff and Kemar McGregor, on compilation albums that were licensed specifically for those compilation albums by Kemar McGregor, prior to the release of the Strong One and the Free Expressions album. The defendants also credited Free minds publishing for some of the titles in question on those licensed albums. The defendants knew the titles in questioned were not produced under the terms of any agreement and therefore the argument of the defendant for summary judgement based on the non-rejection of fraudulent royalty statements is baseless.*

*In addition, during Case#CV-11-2619, Case#17-CV-03917-JO , Case#17-CV-03917-LB, the defendants argued that Kemar McGregor the co-creator of titles "I am not afraid, Free, I know you love me, Happy Heart, Mocking Bird", transferred my rights to the defendants. (see Kemar McGregor's affidavit attached as exhibit C) and John McQueeny's affidavit included. Their argument was rebutted by one of the attorneys who negotiated both settlement agreement, Linda Birkenfeld, see attached affidavit in (Exhibit C). The defendants agreed in case#17-CV-03917-LB that only McGregor's rights were transferred and that the artist or co-creators' rights was reserved. This is an ongoing dispute, and the defendants knew they never had the right to use the titles and only received Kemar McGregor's share of those rights in 2014, and 2018. The defendants are aware that within the two settlement agreements with Kemar McGregor, that the plaintiff rights were reserved, and that no agreement governs the titles in dispute.*

## DEFENDANTS' REPLY:

Plaintiff's response does not controvert these Statements of Material Fact.  Nor could it because these Facts (i) reference the existence of an agreement attached to the TAC (Ex. G [DE 103, pp. 105-115]), and (ii) directly quote from Par. 8 of the 2007 Songwriter Agreement (DE 103, p. 110). Instead, Plaintiff submits a two-page "response" replete with non-responsive arguments that should be disregarded under the precedent cited at pages 1-3 above.

For example, Plaintiff asserts that the agreement was "back dated", even though the Court has rejected this contention (*see* DE 75 at 18-19; DE 123 at 17).  As such, her argument that the "back-dating" was undertaken to "capture songs" is not only inadmissible, self-serving speculation that does not raise a genuine issue of material fact, but also it is legally irrelevant.  Similarly, Plaintiff's reference to an agreement she asserts she rejected in 2008 and to alleged arguments in a different lawsuit have nothing to do with Statements of Material Fact Nos. 20-21 and should be disregarded under the precedent cited at page 1-3 above.

## Defendants' Statement of Material Fact No. 22:

***See*** **Weiner Decl., ¶ 5 and Exhibit 1 thereto;** *see also* **Exhibit E to TAC [DE 103].**

22.     **Section 8 of the 2007 Songwriter Agreement further provides:**

> **Each statement submitted by Publisher [GPL] to Writer [Plaintiff] shall be binding upon Writer [Plaintiff] and not subject to any objection by Writer [Plaintiff] for any reason unless specific written objection, stating the basis thereof, is sent by Writer [Plaintiff] to Publisher [GPL] within three (3) years after the date said statement is submitted . . .**

*See* **Weiner Decl., ¶ 6 and Exhibit 1 thereto;** *see also* **Exhibit E to TAC [DE 103].**

**Disputed:  Plaintiff's Response to Paragraph 22**:

*Plaintiff re-asserts that any statement produced under this agreement is invalid due to the facts stated:*

*There are several titles fraudulently claimed by STB Music Inc and sublicensed to Sony ATV, and BMG Rights Management which collections from these entitles was not reported on plaintiff royalty statements.*

*No agreements exist between Plaintiff and STB Music Inc.*

- *In recently discovered emails from Luis Batista of Greensleeves/STB and Robert Baker of Broadcast Music Inc. Luis Batista of Greensleeves on Feb. 18, 2022, attempted to alter registrations of song titles being claimed by BMG Rights Management.* **(See exhibit O)**.

- *On March 15, 2022, Robert Baker of Broadcast Music Inc sent plaintiff an email requesting to verify a change request from Louis Batista to change the publisher to Greensleeves. The communication continued through August 16, 2023, where Mr. Baker admitted the original publisher for, I am not afraid was Free Minds Music publishing registered 2008 and the additional registration done by Greensleeves in 2009 should not have been accepted and all further collections will be on hold until the end of this litigating.* **(See exhibit P)**.

- *On March 3, 2022, the defendants Louis Batista acknowledge that Music by Greensleeves had been the publisher collecting on behalf of plaintiff and attempted to alter the registration to reflect that "Music by Greensleeves" is sub-publisher for Greensleeves publishing. Which simply means that any collection made by music by Greensleeves was never applied to publishing statements. Plaintiff does not have any agreement with Music by Greensleeves, or Songs of Greensleeves. These fraudulent collections by music by Greensleeves further dilutes any income or royalties owed to plaintiff.* **(See Exhibit P)**.

- *The defendants created a derivative of Greensleeves, "Music by Greensleeves", and attempted to make the derivative company sub-publisher of the works after the derivative company has been collecting royalties for many years as publisher.*

- *No agreement with the defendants governs the sound recording or publishing of songs in dispute.*

**DEFENDANTS' REPLY:**

Plaintiff's response does not controvert this Statement of Material Fact.  Nor could it because this Fact directly quotes from Par. 8 of the 2007 Songwriter Agreement (DE 103, p. 110).  Instead, Plaintiff "responds" with non-responsive argument that should be disregarded under the precedent cited at pages 1-3 above.

Moreover, Plaintiff's reference to emails between Greensleeves and BMI are not, and could not be, relevant to Defendants' motion for summary judgment since they have no bearing on the "incontestability provision" in the 2007 GPL Songwriter Agreement.[5]

**Defendants' Statement of Material Fact Nos. 23-25:**

23.    **GPL sent the royalty statement covering the period from January - June 2018 ("GPL 1H 2018 Statement") to Plaintiff on November 2, 2018.** *See* **Weiner Decl., ¶ 7 and Exhibit 2 thereto.**

24.    **GPL's royalty statements to Plaintiff for the 2007 Songwriter Agreement and the 2014 Co-Publishing Agreement were submitted to Plaintiff as a single document that included two discrete statements, with the first portion applying to the 2007 Songwriter Agreement and referring to Plaintiff with the artist number "38" and the second applying to the 2014 Co-Publishing Agreement and referring to Plaintiff with the artist number "427".** *See* **Weiner Decl., n.1.**

25.    **For example, for the GPL 1H 2018 Statement, the pages numbered at the top right corner as pages 1 - 60 contain only artist number "38" and apply to the 2007 Songwriter Agreement, and the pages numbered 61 - 85 include the artist number "427" and apply to the 2014 Co-Publishing Agreement.** *See* **Weiner Decl., n.1 and Exhibit 2 thereto.**

**Disputed:  Plaintiff's Response to Paragraph Nos. 23-25:**

*At no point during 2018 was this statement the defendants refer to, sent to plaintiff in accordance with Clause 15 of the songwriter agreement. The actual sent date of the statements was September 2020 by Luis Batista, see email in* **Exhibit Q**. *Furthermore, the explanation in defendants' line 24 and 25, was never made to plaintiff in any response from defendant CEO's partner Weiner. Upon verbal communication to Weiner in 2015, Weiner advised plaintiff to "Pick out the songs that relate to the I Rise Album and calculate the royalties earned to figure out what is due to plaintiff". The 2007 song writing agreement and the 2014 co-publishing agreement are under different terms, different song titles*

---

[5] Defendants produced the emails referenced in this part of Plaintiff's Response in discovery.  While Defendants disagree with the arguments Plaintiff seeks to make based on these emails, Defendants are not addressing these arguments here because they are irrelevant to the resolution of Defendants' motion for summary judgment.

*recorded and should not be reported in one statement, reflecting a combined balance and combined income earned. This issue has been ongoing since 2015, one year after the release of the "I Rise" album and continued throughout the proceeding years. The 2007 songwriter agreement does not limit any actions that can be brought against the defendants, but it requests that defendants be given time to remedy any dispute within a specific time. Plaintiff continuously raised issues with the defendants' breaches through to the year 2020 and beyond.*

## DEFENDANTS' REPLY:

Plaintiff's response does not controvert these Material Statements of Facts. Instead, Plaintiff "responds" with non-responsive argument that does not raise a genuine issue of fact and should be disregarded under the precedent cited at pages 1-3 above.

First, Plaintiff carefully phrased her response to Material Statement of Fact No. 23. Instead of admitting that she received the GPL 1H 2018 royalty statement in November 2018, she states that she did not receive it "in accordance with Clause 15 of the [2007 GPL] songwriter agreement." Nothing in this Statement of Material Fact raised Clause 15, and her "response" exemplifies the type of evasion that the decisions cited at pages 1-3 above reject. Moreover, Plaintiff *could not deny* that she received the royalty statement in November 2018, because (i) she replied to the email from GPL sending it to her within hours of receiving it (*see* DE 171-2 and DE 171-3), and (ii) admits receiving it in November 2018 (*see* DE 202, at p. 27).

Second, Plaintiff's argument that there were "different terms" under the 2007 GPL Songwriter Agreement and the 2014 Co-Publishing Agreement (i) is not a reason why the royalty accounting could not be sent to Plaintiff in one document (as Greensleeves has done for years), or (ii) an exception to the agreements' "incontestability clauses."[6]

Third, Plaintiff's legal argument at the end of her response to these Statements of Material Fact is irrelevant under the authorities cited in Defendants' MOL and Reply MOL, none of which Plaintiff addressed or attempted to distinguish.

## Defendants' Statement of Material Fact Nos 26-27:[7]

**[Rule 56.1 Statement of Material Fact No. 26]** **The GPL 1H 2018 Statement sets forth that, for the royalty period ending June 2018, the "balance carried forward" was $ 6,623.85 DB, with the "DB" signifying that the amount is a "debit" due to GPL and, thus, the amount of Plaintiff's unrecouped royalty account with GPL.** *See* **Weiner Decl., ¶ 8 and Exhibit 2 thereto, p. 2. [Rule 56.1 Statement of Material Fact No. 27] Accordingly, under Section 8 of the 2007 Songwriter Agreement, no royalties were**

---

[6] Moreover, Plaintiff's Response does not controvert Material Statement of Fact No. 25, which shows, with reference to DE 171 (Jessica Weiner Declaration) and DE 171-7 at 1, 99 and 100 (royalty statement) where royalty accounting under 2007 GPL Songwriter agreement ends and where it begins under 2104 Co-Publishing Agreement.

[7] Plaintiff's Response quotes Defendants' Statement Nos. 26-27 but does not include their numbers (which Defendants have added in brackets).

due to Plaintiff for the period ending June 2018 because her royalty account was still unrecouped.

*See* Weiner Decl., ¶ 8 and Exhibit 2 thereto.

**Disputed:  Plaintiff's Response to Paragraph Nos. 23-26 [sic; as noted in FN 6, Plaintiff's Response actually is to Rule 56.1 Statement of Fact Nos. 26-27]**:[8]

> *Plaintiff royalties are to be computed and paid in British pounds as were reported in 2008-2009. **See attached Exhibit "R"**. The contract shall remain in its original form and payment terms cannot be changed or converted due to a transfer of undertakings. After receiving the statements in 2009 the defendants failed to report to plaintiff according to clause 8 of the publishing agreement. No statements were sent for 2010 and 2011 until after sending several emails to the defendants for statements in 2012. "All" statements were converted in U.S dollars and the address of Greensleeves was changed to plaintiff's New York address.*

> *Also, Defendants STB Music Inc administered, diluted and sub-licensed several titles to Sony ATV and BMG Rights Management. BMG Rights management has been collecting royalties on several titles since 2008. In an email communication between Defendants representative and the performance royalty society, Defendants representatives, Luis Batista sent an email to BMI representative Robert Baker shortly after this lawsuit was filed instructing him to make changes to the catalog removing BMG rights management from plaintiff's titles (See exhibit "O"). The Luis Batista sent an email instructing BMI to change the registered split of the song title "I am not afraid" to reflect his incorrect splits being sent. The same Robert Baker of BMI sent an email to plaintiff asking plaintiff if the split request by Luis Batista is correct. Even with both defendants, Plaintiff and Kemar Mcgregor, in copy disagreeing with the splits sent by Batista of Greensleeves, the defendants made no efforts to correct the incorrect splits. The defendants should not simply use the word of an employee in a declaration as factual undisputed evidence that plaintiff is not due any royalties and request a partial summary judgement explicitly on the word of a defendants who's being sued. The adherence to the administration clauses of the contract has been grossly misconstrued and callously calculated due to the sub-license deals and incorrect splits that have been reported and convoluted by STB Music Inc and Greensleeves Publishing Limited. STB Music Inc is claiming certain rights on the performance society ASCAP while Greensleeves Publishing Limited is claiming certain rights on performance society BMI. These actions display gross abuse of the rights of the plaintiff.*

**DEFENDANTS' REPLY:**

Plaintiff's response does not controvert the facts set forth in Defendants' Rule 56.1 Statement Nos. 26-27.  Instead, Plaintiff "responds" with non-responsive argument that does not raise a genuine issue of fact and should be disregarded under the precedent cited at pages 1-3 above.

---

[8] Plaintiff's Response mistakenly refers to Defendants' Statement Nos. 26-27 as Nos. 23-26.

For example, nothing in the 2007 GPL Songwriter states that the accountings must be in British pounds or that the address for Greensleeves could not be in New York. Nor does Plaintiff even assert that reporting in United States Dollars instead of British Pounds somehow impacted her. Further, if this was a point of objection, she was required to provide a specific written objection setting forth the basis for such objection. Her reference, once again, to the recent emails between Greensleeves and BMI has no relevance to these Statement of Facts or to the motion for summary judgment.

**Defendants' Statement of Material Fact Nos. 26-27 [sic; the Facts quoted are actually Nos. 28-29, not Nos. 26-27)**: [9]

26.    Plaintiff received this royalty statement on November 2, 2018, which was more than three years prior to Plaintiff commencing this lawsuit. *See* Weiner Decl., ¶¶ 7 and 9.

27.    An email Plaintiff sent to GPL on November 2, 2018 after receiving the royalty statement demonstrates that Plaintiff received the GPL 1H 2018 Statement that day and that she did not set forth specific written objections (or any objections), and simply acknowledged receipt with the word "Right!". *See* Weiner Decl., ¶ 10 and Exhibit 3 thereto.

**Disputed:  Plaintiff's Response**: [10]

*Plaintiff responded "right" because plaintiff was already in dispute with the defendants since the converted statements were sent in 2012, in 2015 and beyond. Plaintiff did not log in, create account or download any statements but simply responded, "right" in protest of the fraudulent statements being created by the defendants and their continuous request to create an account within in the said royalty portal. The defendants did not send the statements in accordance with clause 15 of the songwriter agreement. Plaintiff never received the statement being referred to by defendants until email in 2020 by Luis Batista.*

**DEFENDANTS' REPLY:**

Plaintiff's response does not controvert the facts set forth in Defendants' Rule 56.1 Statement Nos. 28-29. Instead, Plaintiff "responds" with non-responsive argument that does not raise a genuine issue of fact and should be disregarded under the precedent cited at pages 1-3 above.

Moreover, Plaintiff's response *admits* that she received the GPL 1H 2018 Statement in November 2018 (which she purported to controvert in her response to Nos. 23-25 above [*see* Plaintiff's Response on page 20 above]). Further Plaintiff's assertion that she did not "log in or download any statements" is a "baseless distraction" because Plaintiff did not need to "log in" or "download" anything. She simply needed to open the attachment to the email (*see* DE 171-2).

---

[9] Plaintiff's Response mistakenly refers to Defendants' Statement Nos. 28-29 as Nos. 26-27.

[10] As reflected in Footnote 9, Plaintiff's Response is to Statement Nos. 28-29.

**Defendants' Statement of Material Fact Nos. 28- 30 [sic; the Facts quoted are actually Nos. 30-32, not Nos. 28-30)**: [11]

    28.    **GPL received an email from Plaintiff's husband, Andre Morris, on August 7 2019, in which he asserted that (i) the GPL 1H 2018 Statement did not account for Plaintiff's "I Rise" album under the 2014 Co-Publishing Agreement, and (ii) cross-collateralization between the 2007 Songwriter Agreement and the 2014 Co-Publishing Agreement was not permitted. *See* Exhibit 6 to weiner Decl.**

    29.    **Ms. Weiner responded the same day to correct Mr. Morris's assertion regarding the agreement under which GPL accounted for the "I Rise" album and to provide him with the page in the most current GPL royalty statement (for 2H 2018) in which the accounting for "I Rise" began, which was the section pertaining to the GPL 2014 Co-Publishing Agreement and which used artist number "427". *See id.*; *see also* Exhibit 7 to Weiner Decl.**

    30.    **Mr. Morris's assertion in his August 7, 2019 email that the two GPL agreements were not cross-collateralized was also incorrect. Paragraph 9.1 of the 2014 Co-Publishing Agreement states that no amounts are payable to Plaintiff under the 2014 Co-Publishing Agreement until "after deducting any and all unrecouped advances and chargeable costs under this Agreement or any other agreement." See Exhibit 5 to Weiner Decl. [2014 Co-Publishing Agreement], ¶ 9.1 (emphasis added); *see also* 2014 Co-Publishing Agreement, ¶ 6.**

**Disputed:  Plaintiff's Response to Paragraph Nos. 28 – 30:** [12]

*Plaintiff's manager Andre Morris communicated with Defendants CEO partner, Weiner, and CEO, Chris Chin, and Business Affairs attorney John McQueeny on several occasions shortly after the initial dispute brought up on August 7th, 2019. On September 2, 2020, the defendants were notified by Mr. Morris that they were in breach of the 2007 publishing agreement for failure to render statement in over a two-year period. See exhibit (h) the defendants did not respond to this email directly; however, Luis Batista sent the statement via email on that same day. As plaintiff stated earlier the statement were not sent in 2018 it was sent and received on September 2, 2020. Shortly after his date Plaintiff retained the legal services of Miami Entertainment Law Group to represent them in this matter, very shortly after receiving some advice from council, the plaintiff sent additional email disputes to defendants on November 20, 2020, with the entire administration staff of BMI included. **See Exhibit "S"**.*

---

[11] Plaintiff's Response mistakenly refers to Defendants' Statement Nos. 30-32 as Nos. 28-30.
[12] As reflected in Footnote 11, Plaintiff's Response is to Statement Nos. 30-32, not Nos. 28-30.

**DEFENDANTS' REPLY:**

Plaintiff's response does not controvert the facts set forth in Defendants' Rule 56.1 Statement Nos. 30-32.  Instead, Plaintiff "responds" with non-responsive argument that does not raise a genuine issue of fact and should be disregarded under the precedent cited at pages 1-3 above.

Moreover, Andre Morris's "declaration" is inadmissible under 28 U.S.C. § 1746 and, even if this were not the case, it still would not raise a genuine disputed issue of material fact.  Further, Mr. Morris's assertion that the 2007 GPL Songwriter Agreement and the 2014 Co-Publishing Agreement are not cross-collateralized is not only inadmissible, but also it is contradicted by the agreements themselves.  *See, e.g.*, TAC, Ex. M, ¶ 9.1 and TAC, Ex. E, ¶ 8 (both provisions state that royalties are only payable under the respective agreements after all unrecouped advances and chargeable costs under "this Agreement or any such other agreement have been deducted").

To the extent that Plaintiff's statement refers to a communication in September 2020, a copy of the communication is not attached to Plaintiff's opposition papers, and Mr. Morris's statement about its contents is inadmissible.  Further, the November 20, 2020 communication does not set forth objections to any royalty statement, but, instead, asserts that the 2014 Co-Publishing Agreement was "**NEVER VALID**" (DE 202-18, p. 3) (emphasis in original).  Plaintiff's assertion is meritless for the following reasons:

- **First**, Plaintiff asserts that Defendants are in breach of the 2014 Co-Publishing Agreement in her Third Cause of Action, thereby ratifying the agreement;

- **Second**, Plaintiff's argument that the 2014 Co-Publishing Agreement is a nullity because it was co-terminous with the 2007 Recording Agreement, which Plaintiff states terminated in December 2012, is contradicted by Plaintiff's TAC, ¶ 65 (*admitting "I Rise" was released in 2014 under 2007 Recording Agreement*), and ¶ 99 (*admitting 2014 Co-Publishing Agreement was in effect through delivery of "I Rise" album)*;

- **Third**, Plaintiff admits that she received an Advance under the Co-Publishing Agreement (TAC, ¶ 100); and

- **Fourth**, the 2014 Co-Publishing Agreement states that *the 2007 Recording Agreement "remains in full force and effect"* and that the 2014 Co-Publishing Agreement applies to compositions embodied the recordings delivered to VP under the 2007 Recording Agreement that comprise "the Third Option (as defined thereunder)," which is the option pursuant to which Plaintiff delivered "I Rise" (TAC, Ex. M, ¶ 4.1).

**Defendants' Statement of Material Fact Nos. 31-32 and Nos. 35-38 [sic] (these are Nos. 33-38, not Nos. 31-32 and Nos. 35-38)**: [13]

31.    The 2007 Songwriter Agreement contains equally clear cross-collateralization provisions. *See* Exhibit 1 to Weiner Decl., [2007 Songwriter Agreement], ¶¶ 8 and 11.1.

32.    The first royalty statement issued to Plaintiff under the 2007 Songwriter Agreement within three years of this lawsuit was the royalty statement for the period from July - December 2018 (the "GPL 2H 2018 Statement"). *See* Weiner Decl., ¶ 11 and Exhibit 4 thereto (the GPL 2H 2018 Statement is at pages 84-218 of the PDF).

35.    In the GPL 2H 2018 Statement, the "balance brought forward" is taken from and is the same number set forth in the GPL 1H 2018 Statement as the "balance carried forward", i.e., $6,623.85 DB. *See* Weiner Decl., ¶ 12 (compare Exhibit 4 thereto, p. 84 with Exhibit 2 thereto, p. 1).

36.    After setting forth the "balance brought forward," the GPL 2H 2018 Statement then sets forth the royalties and expenses reported during the 6-month period covered in the GPL 2H 2018 Statement. *See* Weiner Decl., ¶ 12 and Exhibit 4 thereto, p. 84.

37.    Thereafter, as the GPL 2H 2018 Statement reports, the "balance carried forward" was $ 6,267.76 DB (Plaintiff's new unrecouped amount). *See* Weiner Decl., ¶ 12 and Exhibit 4 thereto, p. 84.

38.    Accordingly, the "balance carried forward" number on the GPL 2H 2018 Statement is directly derived from the "balance carried forward" number on the GPL 1H 2018 Statement, with the only differences relating to activities reported after the period applicable to the GPL 1H 2018 Statement had ended. *See* Weiner Decl., ¶ 12 and Exhibit 4 thereto, p. 84.

**Disputed:  Plaintiff's Response to Paragraph Nos. 31-38**: [14]

*1.    The defendants' agreements should be reviewed for their legitimacy by the court due to several contradicting clauses and ambiguity.*

*2.    The defendants cannot cross-collateralize song titles that were not created within the terms of either agreement.*

*3.    The defendants cannot cross collateralize song titles that were created on the "I Rise album" with any agreement because the terms of the co-publishing agreement was made co-terminus with the two-year expired 2007 recording agreement which*

---

[13] Plaintiff's Response mistakenly refers to Defendants' Statement Nos. 33-38 as Nos. 31-32 and Nos. 35-38.
[14] As reflected in Footnote 13, Plaintiff's Response is to Statement Nos. 33-38, not Nos. 31-32 and 35-38.

expired on December 1, 2012, making the 2014 co-publishing agreement null and void.

4.   The 2007 contradicting clauses make it extremely difficult and confusing to determine the rights in the exploitation of the title. Further, the purpose of the 2007 publishing agreement is for employment that does not govern the song titles in question.

5.   For the songs that were created under the terms of the 2007 publishing agreement, the employment began as of the December 1, 2007, which grants of rights clause grants the publisher all rights of every kind. Clause 23 states:

Page 11 of 11

23.   OWNERSHIP AND ADMINISTRATION

Notwithstanding any provision to the contrary herein contained, all Compositions shall be equally owned by Publisher and by Writer's designee, and shall be exclusively administered by Publisher. The Compositions shall be registered for copyright by Company in the name of Company and Writer, where applicable.

Clause 3.2 states:

(c)    To secure copyright registration and protection of the Compositions in Publisher's name or otherwise, as Publisher may desire, at Publisher's own cost and expense, and at Publisher's election, including any and all renewals and extensions of copyright under any present or future laws throughout the world, and to have and to hold said copyrights, renewals and extensions and all rights existing thereunder, for and during the full term of all said copyrights and all renewals and extensions and all rights existing thereunder, for and during the full term of all said copyrights and all renewals and extensions thereof.

Clause 7.5 states:

7.5    Fifty percent (50%) of any and all Net Receipts, after deduction of foreign taxes, actually received by and/or credited to Publisher in the United Kingdom from the exploitation of the Compositions in countries outside of the United Kingdom (other than public performance royalties, which are covered in clause 7.4 above), whether from collection agents, licensees, sub-publishers or others, and whether or not same are affiliated with, owned in whole or in part by, or controlled by Publisher.

7.10    In no event shall Writer be entitled to share in any advance payments, guarantee payments or minimum royalty payments which Publisher shall receive in connection with any sub-publishing agreement, collection agreement, licensing agreement or other agreement covering the Compositions or any of them.

Writer owns 50% of the song titles created under the terms of the back dates 2007 publishing agreement according to clause 23. 7.5 states that writer received 50% of all net receipts after the deduction of foreign taxes from the exploitation of the compositions whether from licensing or sub-publishers, "or other". While 7.10 states in no event shall writer be entitled to minimum royalty payment which publisher shall receive in connection with any sub-publishing agreement, collection agreement, other licensing agreement covering the composition, "or any of them". These two clauses are not cohesive with clause

*23 and are not clear what the writer is entitled to. Also, there is no song list annexed which displays the songs that are deemed transferrable under the grants of rights.*

*Andre Morris, the manager of the Plaintiff, disputed the cross collateralization of the 2014 co- publishing agreement which does not give the defendants the permission to cross-collateralize with any other agreement and the back dated 2007 publishing on August 7, 2019 and further disputed the collection and calculation of the mechanical royalties on the I rise album in another email with the CEO and Business Affairs attorney due to the terms and conditions of both contracts being totally different. Based on 2014 co-publishing agreement in addition to owning fifty (50%) of all rights to the "I Rise" album, the plaintiff is to be compensated 20% of the publisher's share based on clause 7.2 and in the 2007 Songwriter plaintiff should receive 50% of the publisher share resulting from any sub licenses agreement. The combined statement presented by the defendants was not agreed upon in the 2014 co-publishing agreement and neither was it explicitly stated in the agreement in clause 9.*

**DEFENDANTS' REPLY:**

Plaintiff's response does not controvert the facts set forth in Defendants' Rule 56.1 Statement Nos. 33-38. Instead, Plaintiff "responds" with non-responsive argument that does not raise a genuine issue of fact and should be disregarded under the precedent cited at pages 1-3 above.

Plaintiff's contention that there is ambiguity is unfounded and a "red herring" because the purported ambiguity is not relevant to and does not raise a genuine issue of material fact with respect to the application of the incontestability clauses.

Defendants addressed above (i) the inadmissibility of Mr. Morris's lack of cross-collateralization argument, and (ii) the provisions in the 2007 GPL Songwriter Agreement and 2014 Co-Publishing Agreement that refute Mr. Morris argument (*see* page 24 above, second paragraph of Reply to Nos. 30-32). Moreover, to the extent Plaintiff contends that cross-collateralization of the "uncontracted songs" is improper, as discussed in Defendants' MOL and Reply MOL, not only is this argument untimely under the incontestability clauses, but also Plaintiff's challenge regarding the so-called "uncontracted songs" is untimely under New York's applicable statute of limitations.

Plaintiff's assertion that the 2014 Co-Publishing Agreement is "null and void" (DE 202 at p. 31 of 37 [lines 3-7]) is meritless, as shown in the bullet points on page 24 above.

**Defendants' Statement of Material Fact Nos. 39-40:**

39. **Plaintiff and GPL entered into a Co-Publishing and Administration Agreement entered into as of March 20, 2014 ("2014 Co-Publishing Agreement").** *See* **Weiner Decl., ¶ 13 and Exhibit 5 thereto.**

40. **Under Section 9.1 of the 2014 Co-Publishing Agreement, GPL was to issue Plaintiff royalty statements on a bi-annual basis as follows:**

**Publisher [GPL] shall compute the royalties earned by Writer [Plaintiff] pursuant to this Agreement and pursuant to any other agreement between Writer [Plaintiff] and Publisher [GPL] or its affiliates, whether now in existence or entered into at any subsequent hereto, on or before March 31st for the semi-annual period ending the preceding December 31st and on or before September 30th for the semi-annual period ending the preceding June 30th, and shall thereupon submit to Writer [Plaintiff] the royalty statement for each such period together with the net amount of royalties, if any, which shall be payable after deducting any and all Unrecouped advances and chargeable costs permitted under this Agreement or any such other agreement.**

*See* **Weiner Decl., ¶ 13 and Exhibit 5 thereto;** *see also* **Exhibit M to TAC [DE 103].**

**Disputed:  Plaintiff's Response to Paragraphs 39-40**:

1.  *Plaintiff has argued the validity of this agreement based on the terms clearly set forth in Clause 2 (Term) and the (grants of rights) in Clause 4. The contention of the validity of this agreement has been argued by plaintiff previous attorneys in emails sent to Weiner and Executives of BMI on November 20, 2020 in an attempt to have the defendants relinquish their claims to all titles on "I Rise Album" and the "Better Tomorrow" which by the language in contract drafted by the defendants does not fall under or within the terms of any publishing agreement with the defendants.*

A.  *Below is the analysis of the language of which makes the 2014 co-publishing Invalid and unenforceable, which is a decision left for the court to make based on its own findings.*

*Provision 2 of the December 1, 2007 songwriter agreement provides verbatim, **"the initial term of the agreement shall commence for a term of five years ("term").** This agreement ended on November 30, 2012.*

*Provision 2. Of the May 1, 2007 recording agreement provides verbatim, **"the term of this agreement (the "term") shall commence as of the date first set forth above and continue for a period coterminous with the term of that certain agreement between writer and VP music Group dated may 1, 2007 (as amended).** Plaintiff brings to the court attention that the recording agreement entered into by the parties on May 1, 2017 concluded on November 30, 2012. The term of the march 20, 2014 publishing agreement specifically provides that its "term" is coterminous with the recording agreement concluded on November 30, 2012; two full years prior to the date of the 2014 co-publishing agreement as such, the march 20, 2014 agreement was never valid as on its own terms, the 2014 publishing agreement, similar to the 2007 recording agreement, concluded on November 30, 2012. The defendants, of their own accord, tied the march 20, 2014 publishing agreement to the may 1, 2007 recording agreement, therefore when the may 1, 2007 agreement concluded, so too did the 2014 publishing agreement. Any exploitation, or*

*assignments of rights to warner music or any other third-party company under the terms of the 2014 co-publishing agreement is invalid.*

**DEFENDANTS' REPLY:**

Plaintiff's response does not controvert the facts set forth in Defendants' Rule 56.1 Statement Nos. 39-40.  Instead, Plaintiff "responds" with non-responsive argument that does not raise a genuine issue of fact and should be disregarded under the precedent cited at pages 1-3 above.

Moreover, Plaintiff's repetition of her argument that the Co-Publishing Agreement is null and void, fails for the reasons set forth on page 24 above.

**Defendants' Statement of Material Fact Nos. 41-44**:

41.   **Section 9.2 of the 2014 Co-Publishing Agreement further provides:**

**Each statement submitted by Publisher [GPL] to Writer [Plaintiff] shall be binding upon Writer [Plaintiff] and not subject to any objection by Writer [Plaintiff] for any reason unless specific written objection, stating the basis thereof, is sent by Writer [Plaintiff] to Publisher [GPL] within two (2) years after the date said statement is submitted . . .**

*See* **Weiner Decl., ¶ 15 and Exhibit 5 thereto;** *see also* **Exhibit M to TAC [DE 103].**

42.   **GPL sent Plaintiff the GPL 1H 2018 Statement on November 2, 2018, which was more than two years prior to commencement of this lawsuit, and to which Plaintiff did not submit specific written objection.** *See* **Weiner Decl., ¶ 16 and Exhibits 2-3 thereto.**

43.   **GPL sent Plaintiff the GPL 2H 2018 Statement within two years of Plaintiff commencing this lawsuit.** *See* **Weiner Decl., ¶ 17 and Exhibit 4 thereto.**

44.   **Therefore, under the terms of the 2007 Songwriter Agreement and 2014 CoPublishing Agreement, the royalty statements sent to Plaintiff prior to the GPL 2H 2018 Statement are binding on Plaintiff.** *See* **Weiner Decl., ¶ 18.**

**Disputed:  Plaintiff's Response to Paragraph Nos. 41-44**:

*1.    The defendants cannot account to plaintiff for songs that were created outside of the terms of all agreements between the plaintiff and defendants.*

*2.    Plaintiff restates that this statement provided by the defendants, were not sent until September 2020 and thereon plaintiff's attorney emailed the defendants disputing the rights being claimed by defendants and promptly went on to file this law suit against the defendants. The statements provided by the defendant in this document are not factual and contain several issues that were disputed by plaintiff's manager Andre Morris and previous attorneys.*

3.    In addition to the stated facts, plaintiff also did not receive the stated royalty percentage as per clause 7.2. In the 2014 co-publishing agreement. Plaintiff owns 50% of all the rights to the titles written under this contract. The Defendants have entered into sub-licenses agreements to Warner Music Group for various titles in which defendants does not own nor control the rights to. Defendants have infringed on plaintiff's rights and not paid royalties for her share of rights in which she is part owner under the 2014 co-publishing agreement and as stated the many derivative companies created by the defendants as sub-publishers, makes the collections and calculations even more convoluted as sub-publishers are also paid a percentage in connection with their collections plus other charges and fees.

**DEFENDANTS' REPLY:**

Plaintiff's response does not controvert the facts set forth in Defendants' Rule 56.1 Statement Nos. 41-44.  Instead, Plaintiff "responds" with non-responsive argument that does not raise a genuine issue of fact and should be disregarded under the precedent cited at pages 1-3 above.

Further, as discussed above, Plaintiff's statement that she did not receive the GPL 1H 2018 Statement until September 2020 is false *and* does not raise a genuine issue of material fact.  Her statement is:

- **One**, contradicted by Plaintiff's admission that she received it in November 2018 [*see* DE 202 at p. 27 of 37]; and

- **Two**, contradicted by emails between Greensleeves and Plaintiff that show that Plaintiff both received the Statement on November 2, 2018 and responded to the email sending it to her the same day.  *See* DE 171-2 (November 2, 2018 email sending GPL 1H 2018 Statement to Plaintiff; "Subject" line states "PE 06/2018 Publishing Royalty Statement") and DE 171-3 (pages 1-2 of 2) (November 2, 2018 response email from Plaintiff to Greensleeves; "Subject" line states "Re: PE 06/2018 Publishing Royalty Statement").

Dated: January 23, 2024                              Respectfully submitted,


                                                     **FOX ROTHSCHILD LLP**


                                                     _____
                                                     Alan R. Friedman, Esq.
                                                     Philip Z. Langer, Esq.
                                                     101 Park Avenue, Suite 1700
                                                     New York, New York 10178
                                                     (212) 878-7900

                                                     *Counsel for Defendants*

30