UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHAUNA MCKENZIE-MORRIS,

                          Plaintiff,

          -against-

V.P. RECORDS RETAIL OUTLET, INC., et al.,

                          Defendants.

22-CV-1138 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Shauna McKenzie-Morris, who is currently proceeding *pro se*, filed this action against Defendants V.P. Records Retail Outlet, Inc., V.P. Music Group, Inc., V.P. Record Distributors, LLC, V.P. Records of Brooklyn, LLC, Greensleeves Publishing, Ltd, and STB Music Inc. (collectively, "Defendants"), which are various record labels, distributors, and publishers. McKenzie-Morris alleges that Defendants have breached the terms of certain contracts: namely, a 2007 Recording Agreement, a 2007 Songwriter Agreement, and a 2014 Co-Publishing Agreement. She asserts that Defendants have failed to pay her royalties that she was owed, improperly included certain recordings on albums, and improperly registered or failed to register certain musical compositions.

During discovery, Defendants moved for partial summary judgment seeking to dismiss certain of Plaintiff's claims on timeliness grounds. On September 27, 2024, this Court issued an order granting and denying that motion in part. ECF No. 240 (the "2024 SMJ Order"). In particular, the 2024 SMJ Order found, as to Plaintiff's second cause of action regarding the 2007 Songwriter Agreement, that it was not clear why English, rather than New York, law should govern the contract's provisions, and that Defendants had not briefed that question. 2024 SMJ

Order at 19. Accordingly, the Court denied Defendants' motion *without prejudice* with respect to this question and any related issues. *Id.*

Presently before the Court is Defendants' renewed summary judgment motion on this precise issue—namely, the applicability of English law to the 2007 Songwriter Agreement and whether Plaintiff's claims based on this agreement are time-barred. Also before the Court are motions by McKenzie-Morris related to alleged misconduct and ethical violations by Defendants' attorneys during this litigation. Specifically, she moves for sanctions and disqualification, and she seeks declaratory judgment and a permanent injunction.

For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part. The Court finds that English law applies to the 2007 Songwriter Agreement and that the incontestability provision is enforceable, but finds there are genuine issues of material fact as to whether certain communications qualify as "specific" objections to royalty statements, and so the second cause of action with respect to royalties will proceed. The Court does conclude, however, that Plaintiff's claim regarding Defendants' failure to register certain musical compositions is partially dismissed as time barred because Plaintiff has not shown a justification for tolling the limitations period. The Court then denies Plaintiff's motions for sanctions, disqualification, and declaratory judgment, finding no evidence of bad faith nor misconduct by Defendants' counsel.

Finally, as the Court previously indicated, and as the parties previously agreed, the Court will refer the parties to Magistrate Judge Ricardo for a settlement conference by separate order.

## BACKGROUND

For the purposes of this Order, the Court assumes the parties' familiarity with the facts of the case, as laid out by Judge Woods in his opinion, which dismissed Plaintiff's copyright and fraud claims but permitted Plaintiff's breach of contract claims to proceed, *see* ECF No. 123 at

2–8, and as further summarized by this Court in the 2024 SMJ Order. *See* ECF No. 240 at 2–8. Therefore, the Court only briefly discusses the procedural and factual background relevant to the instant motions.

Plaintiff first commenced this action on January 7, 2022 in state court. ECF No. 1-1. Defendants removed the action to federal court on February 9, 2022. ECF No. 1. Plaintiff filed her third amended complaint (which is the operative complaint) on April 25, 2023. ECF No. 103 (the "TAC"). The TAC alleged six causes of action: breach of contract of three separate agreements, copyright infringement, fraud, and an accounting. TAC ¶¶ 105–230.  Judge Woods previously dismissed the fraud and copyright infringement claims, leaving only breach of contract claims.

This action arises from, and relates to, three contracts entered into between Plaintiff and the Defendants: (1) a May 1, 2007 recording agreement between Plaintiff and V.P. Music Group, Inc. ("VP Music"), (2) a December 1, 2007 songwriter agreement between Plaintiff and Greensleeves Publishing, Ltd. ("GPL" or "Greensleeves"), and (3) a March 20, 2014 co-publishing and administration agreement between Plaintiff and GPL. *See* ECF No. 170-1 (the "2007 Recording Agreement"); ECF No. 255-4 (the "2007 Songwriter Agreement" or the "2007 SWA"); ECF No. 255-8 (the "2014 Co-Publishing Agreement," and together with the 2007 Recording Agreement and the 2007 Songwriter Agreement, the "Agreements"). Each of these Agreements contains what is commonly referred to as an "incontestability" provision. This clause operates to define the applicable time period for any party to raise a claim, dispute, or disagreement relating to the breach, interpretation, of performance of the Agreements. 2024 SMJ Order at 3–5. Only the second cause of action—breach of contract relating to the 2007 SWA—is relevant to this Order.

The 2007 Songwriter Agreement is the basis of Plaintiff's second cause of action for breach of contract and the primary focus of Defendants' motion. Plaintiff alleges that Defendants breached the 2007 Songwriter Agreement in two ways: (i) by not paying all her owed royalties, and (ii) by failing to properly register certain of her musical compositions. With respect to the royalties, the 2007 Songwriter Agreement provides:

> Publisher shall compute the royalties earned by Writer pursuant to this Agreement and pursuant to any other agreement between Writer and Publisher or its affiliates, whether now in existence or entered into at any subsequent hereto, on or before March 31st for the semi-annual period ending the preceding December 31st and on or before September 30th for the semi-annual period ending the preceding June 30th, and shall thereupon submit to Writer the royalty statement for each such period together with the net amount of royalties, if any, which shall be payable after deducting any and all unrecouped advances and chargeable costs permitted under this Agreement or any such other agreement.

2007 Songwriter Agreement § 8. It additionally states:

> Each statement submitted by Publisher to Writer **shall be binding** upon Writer and not subject to any objection by Writer for any reason unless **specific written objection**, stating the basis thereof, is sent by Writer to Publisher **within three (3) years after the date said statement is submitted**.

*Id.* (the "2007 Songwriter Agreement Incontestability Clause") (emphasis added). And with respect to the registration of music compilations, section 23 of the 2007 Songwriter Agreement provides:

> Notwithstanding any provision to the contrary herein contained, all Compositions shall be equally owned by Publisher and by Writer's designee, and shall be exclusively administered by Publisher. The Compositions shall be registered for copyright by Company in the name of Company and Writer, where applicable.

*Id.* § 23. Finally, the 2007 Songwriter Agreement contains a choice of law provision, and provides that it "shall be deemed to have been made in England, and its validity, construction and effect shall be governed by the laws of England applicable to agreements wholly performed therein." *Id.* § 17.

4

To summarize, the 2007 Songwriter Agreement contains the following, pertinent provisions: (1) as to royalties, GPL must submit scheduled royalty statements to Plaintiff, and Plaintiff must submit "specific" objections within three years of a statement being submitted; (2) with respect to the registration of compositions, Plaintiff and GPL share equal ownership of the compositions, but any compositions registered for copyright would be in GPL's name and administered by GPL; and (3) English law substantively governs the agreement.

On November 2, 2018, GPL sent the required royalty statement to McKenzie-Morris by electronic mail for the period covering January 2018 through June 2018. ECF No. 255-5 (the "GPL 1H 2018 Statement"). The GPL 1H 2018 Statement included two discrete statements. The first is a royalty statement under the 2007 Songwriter Agreement and under the 2014 Co-Publishing Agreement, with the first portion referring to Plaintiff with the artist number "38." The second statement, applying to the 2014 Co-Publishing Agreement, refers to Plaintiff with the artist number "427." *See* ECF No. 255-3 at 2 n.1. As to the 2007 Songwriter Agreement, the GPL 1H 2018 Statement indicated a "Balance Brought Forward" amount of "$7,039.36 DB" and a "Balance Carried Forward" amount of $6,623.85." *Id.*¶ 7; ECF No. 255-5 at 2. Later that same day, McKenzie-Morris replied to the email simply saying "Right!" ECF No. 255-6.

Several months later, on August 7, 2019, Andre Morris—Plaintiff's manager and husband—emailed GPL apparently asserting that the GPL 1H 2018 Statement did not account for Plaintiff's "I Rise" album under the 2014 Co-Publishing Agreement; and (2) that cross collateralization between the 2007 SWA[1] and the 2014 Co-Publishing Agreement was not

---

[1] In his email, Andre Morris does not explicitly say "2007 Songwriter Agreement," but instead describes it as the 2007 "publishing deal." ECF No. 255-9 at 2. The Court understands this reference to be to the 2007 Songwriting Agreement given, among other things, Morris referenced Section 22 for advance payments to Plaintiff, which is described in that agreement. ECF No. 255-4, ¶ 22. The 2007 Recording Agreement does not have a Section 22.

permitted. ECF No. ECF No. 255-9 at 3. Jessica Weiner from GPL responded that Plaintiff's compositions were appropriately separated by agreement, and that the proper rates had been applied to each group as required by the corresponding agreement. *Id.* at 2. Weiner also explained Paragraph 22 of the 2007 SWA and Paragraph 6 of the 2014 Co-Publishing Agreement contemplated advances paid to Plaintiff. *Id.* And Weiner indicated the "TOTAL ROYALTIES" line indicated the total royalties amount for the relevant period for that applicable set of compositions. *Id.* at 1.

The next required royalty statement under the 2007 Songwriter Agreement, which covered the period from July 2018 through December 2018, was sent by GPL to Plaintiff on September 2, 2020. ECF No. 255-2 ¶ 15; ECF No. 255-7 at 84 (the "GPL 2H 2018 Statement"). Like the prior royalty statement, the GPL 2H 2018 Statement was similarly composed of two discrete statements, separated by the indicators of (38) and (427) to correspond to the 2007 Songwriter Agreement and 2014 Co-Publishing Agreement, respectively. ECF No. 255-7. The GPL 2H 2018 Statement showed, with respect to the 2007 Songwriter Agreement (again indicated by a "(38)") a Balance Brought Forward amount of $7,039.36 and a Balance Carried Forward amount of $6,623.85. *Id.* at 2, 84.

As summarized in the 2024 SMJ Order, Plaintiff contends she and her manager sent several emails and letters purportedly disputing royalty payments since at least 2012. SMJ Order at 6. Several of these communications have been furnished again in connection with the instant motion. *See* ECF Nos. 264-1, 264-2, 265-4. Plaintiff also asserts that the above described 2019 email from Andre Morris was a "conversation" that "continued up until the filing of the lawsuit." ECF No. 263 at 9.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 22. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)). "The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67

(2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must construe that party's submissions 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Taylor v. Quayyum*, No. 16-CV-1143 (GHW), 2023 WL 5293383, at *5 (S.D.N.Y. Aug. 17, 2023) (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999)). "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-2630 (NSM), 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020).

## DISCUSSION[2]

In the 2024 SMJ Order, this Court held that it lacked sufficient information to determine the effect of the 2007 Songwriter Agreement's incontestability clause on the second cause of action for breach of contract. 2024 SMJ Order at 19. Specifically, this Court found that because the 2007 Songwriter Agreement provides that it "shall be governed by the laws of England," *id.*, it could not perform the requisite choice of law analysis because Defendants had not briefed (1) whether incontestability provisions are procedural or substantive in nature; and (2) why English

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

law should not apply. *Id.* This Court further explained that, if Defendants did in fact concede English law applied, they still needed to brief the issue of the enforceability of incontestability provisions under English law. *Id.*

In New York, "courts will generally enforce choice-of-law clauses" because "contracts should be interpreted so as to effectuate the parties' intent." *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 472 (2d Cir. 2022) (quoting *Ministers & Missionaries Benefit Board. v. Snow,* 26 N.Y.3d 466, 470 (2015). In the instant motion, Defendants appear to concede that English law applies to the 2007 Songwriter Agreement. ECF No. 255-1 ("Mem.") at 1, 5. While Plaintiff claims that Defendants are seeking to "selectively" and tactically applying English law when convenient, ECF No. 263 ("Opp.") at 4–5, 12–14, the unambiguous language of the 2007 Songwriter Agreement contemplates the application of English law. *See* 2007 Songwriter Agreement § 8. And because it is "clear and unambiguous on its face," it "must be enforced according to the plain meaning of its terms." *MHR Cap. Partners LP v. Presstek, Inc*., 12 N.Y.3d 640, 645 (2009) (internal citation omitted). Therefore, the Court assumes that English law substantively governs the 2007 Songwriter Agreement, and the remaining discussion proceeds as follows.

The Court first considers whether, under English law, incontestability provisions like the one in the 2007 Songwriter Agreement are enforceable and concludes that they are. Second, the Court examines the impact of this ruling on Plaintiff's second cause of action and finds that her claim is time-barred with respect to any royalty statement issued prior to January 7, 2019, to the extent she did not make any specific objections to them. However, contrary to Defendants' suggestion, and consistent with the 2024 SMJ Order as to the other agreements, whether certain communications qualify as "specific" objections within the meaning of the 2007 Songwriter

Agreement is a matter to be resolved by the jury. Third, the Court finds that Plaintiff's claim regarding composition registration is time-barred to the extent it falls outside the six-year limitations period supplied by English law. Finally, the Court considers, and denies, Plaintiff's motions for sanctions, declaratory judgment, and disqualification.

## I.    Defendants' Motion for Partial Summary Judgment Is Granted in Part and Denied in Part

Defendants, apparently now conceding that English law governs the 2007 Songwriter Agreement, argue that the incontestability provision is enforceable under English law, and validly shortens what would otherwise be a six-year limitations period under English law. Mem. at 5–8. Plaintiff, in her opposition, does not appear to challenge the enforceability of the provision under English law, instead arguing that Defendants are "selectively" invoking English law and that in actuality GPL does not operate under English law. Opp. at 4–6. Plaintiff also argues that Defendants improperly seek summary judgment on matters the Court already decided in the 2024 SMJ Order without having presented new evidence or law. Opp. at 4, 11–12.

Plaintiff's objections are without merit. As previously stated in the 2024 SMJ Order, the Court denied Defendants' motion *without prejudice*, meaning they were free to, and the Court anticipated that they would, file a renewed motion. 2024 SMJ Order at 19–21. The Court also expressly defined the scope of any renewed motion, and having reviewed Defendants' instant motion, concludes that the content does not stray beyond that scope. And while Plaintiff suggests that Defendants are engaging in gamesmanship by applying English law, as stated above, this is what the 2007 Songwriter Agreement expressly contemplates. Accordingly, Defendants' motion is proper, and English law substantively governs the 2007 Songwriter Agreement.

Plaintiff urges that if English law applies, then the Unfair Contract Terms Act of 1977 (the "UCTA") would apply, and would reveal further breaches of the 2007 SWA. Opp. at 14–15.

For example, Plaintiff appears to claim that the UCTA would demonstrate that Defendants' conduct violates Clauses 1 (definition of employment), 7 (compensation), and 8 (accounting) of the 2007 SWA, and that the incontestability clause must be "reasonable" under the UCTA. Opp. at 13–16. However, the UCTA only asks that contract provisions pass a "reasonableness" test. ECF No. 273 ¶¶ 5, 6. In other words, they must be fair and reasonable, considering everything the parties knew or should reasonably have contemplated when making the contract. *Id.* As discussed below, the incontestability provisions here are commercially reasonable under English law, and Plaintiff's complaint does not allege any kind of fraud or nefariousness with respect to the negotiation of the 2007 SWA.

Thus, having determined that English law applies to the 2007 SWA, the Court proceeds to the merits of Defendants' motion.

### A. Incontestability Clauses under English Law

The enforceability of a contract is a question of law to be resolved by the Court, and this appears to be contemplated by English law as well. ECF No. 255-11 at ¶ 6. Defendants have furnished a handful of cases, as well as the declaration of Patrick J. Gardiner—an English legal practitioner who specializes in disputes in the entertainment and media industry—in support of their argument that the incontestability provision in the 2007 Songwriter Agreement is enforceable. Mem. at 5–8; ECF No. 255-11. This Court may properly consider these materials: the Federal Rules of Civil Procedure provide for a clearly-defined mechanism that permits it to consider expert submissions about foreign law. *See* FED. R. CIV. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

Having considered the Gardiner declaration along with various treatises and case law from England, the Court finds that the incontestability provision—as would be the case under New York law as well—is enforceable. Under Section 5 of the United Kingdom's ("U.K.") Limitation Act of 1980, an action "founded on simple contract" must be brought within six years from the date on which the cause of action accrued. Limitation Act 1980, c. 58, § 5 (the "Limitation Act"). The incontestability provision in the 2007 Songwriter Agreement significantly shortens that period to three years, and so the relevant question is whether that clause is unenforceable or voided by the Limitation Act.

Based on English treatises and cases, the incontestability provision in the 2007 SWA is valid. An English treatise relied on by Gardiner, notes that it is "open to the parties to a contract to stipulate in the contract that legal or arbitral proceedings shall be commenced within a shorter period of time than that provided in the Limitation Act 1980." ECF No. 255-11 ¶ 13 (citing Chitty on Contracts (Sweet & Maxwell, 35th ed, 2023), Vol 1, para 32-11). Indeed, Chitty notes that "[s]uch stipulations are not uncommon in commercial agreements" and expressly notes that these contractual provisions may validly bar or completely extinguish a right of action. *Id.*

Defendants have also furnished cases which similarly found that parties can contract to shorten the limitations period. Mem. at 6–7; ECF No. 255-11 at ¶¶ 14–15. And even a brief, independent survey of cases from the United Kingdom shows that English judges have approved contractual modifications of the Limitation Act. *See, e.g.*, *Oxford Architects P'ship v. Cheltenham Ladies Coll.*, [2007] P.N.L.R. 18 at 392–93 (observing that "[i]t is possible for a party to agree that it will not rely on a statutory limitation defence or for the parties to agree that a statutory limitation defence will apply from an agreed date" and that "[i]n certain circumstances a party may be precluded from relying on a statutory defence because of an estoppel."); *Dera Com. Est.*

12

*v. Derya Inc*, (2018) 2 C.L.C. 230 at 232 (holding that the statutory limitations period under the Limitation Act was "irrelevant in circumstances where . . . the parties have contracted for something different."). Therefore, the Court finds that the incontestability clause is enforceable under English law.

### B. Effect of Incontestability Clause on Plaintiff's Second Cause of Action

Having determined that the 2007 Songwriter Agreement's incontestability clause is enforceable, the Court next examines the impact of this determination on Plaintiff's second cause of action.

Plaintiff filed this action on January 7, 2022. ECF No. 1-1. The 2007 Songwriter Agreement's incontestability clause requires that Plaintiff object to a royalty statement within three years of the statement being submitted. Because the Court has determined the clause is valid and enforceable, it follows that Plaintiff is barred from challenging any royalty statement submitted prior to January 7, 2019, unless she submitted "specific" written objections to those statements. The most recent statement from prior to January 7, 2019 is the GPL 2H 2018 Statement, which covered the period from July to December 2018. ECF No. 255-7. All parties agree this statement falls within the three-year period contemplated by the incontestability provision, and can be contested by Plaintiff's lawsuit.

Rather, Defendants urge this Court to determine that Plaintiff has not furnished evidence of specific written objections to the GPL 1H 2018 Statement, and is barred from pursuing claims related to any royalty statement preceding the GPL 2H 2018 Statement. Mem. at 8. Defendants further argue that the question of whether Plaintiff lodged these objections is a question of law to be resolved on summary judgment. Mem. at 7–11. The Court partially grants Defendants' renewed motion on this point.

Here, Plaintiff has furnished emails from 2012 and 2015 (ECF No. 264-2), and pointed to the August 2019 email from Andre Morris which she argues all constitute written objections. While Defendants, through the Grenier declaration, argue that the question of *enforceability* is to be answered by this Court, this is of no moment: whether certain communications constitute "specific" objections is not a matter of the contract's enforceability, but a question of whether certain communications exist, and if they do, what they mean and what the author intended. Because these present genuine issues of material fact, the Court will not grant summary judgment. Further, while Gardiner suggests that in the U.K., a judge would make the determination regarding objections to royalty statements, ECF No. 255-11 ¶ 18, "[i]n actions where the rights of parties are grounded on the laws of jurisdictions other than the forum, it is a well-settled conflict-of-laws rule that the forum will apply the foreign substantive law, but will follow its own rules of procedure." *Dennis v. JPMorgan Chase & Co*., 342 F. Supp. 3d 404, 413 n.31 (S.D.N.Y. 2018) (citing *Bournias v. Atlantic Maritime Co*., 220 F.2d 152, 154 (2d Cir. 1955)).

Therefore, the Court will follow its own procedural rules and deny summary judgment because a reasonable jury could find the 2012, 2015, and 2019 emails to be specific written objections within the meaning of the 2007 SWA. The issue of whether Plaintiff submitted a specific, written objection is one for the jury. *See* 2024 SMJ Order at 17–18 (collecting cases finding that the question of whether a communication constitutes an objection is a question of fact under New York law); *Byrd v. Blue Ridge Rural Elec. Coop*., 356 U.S. 525, 538 (1958) (holding that the "federal policy favoring jury decisions of disputed fact questions" was not to yield to a state rule that contemplated a relevant issue was for the judge, not the jury); *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry,* 494 U.S. 558, 565

(1990) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.").

Based on the foregoing, the Court concludes that Plaintiff's second cause of action is dismissed to the extent it is barred by the 2007 Songwriter Agreement Incontestability Clause. Plaintiff's claims are barred insofar as they are based on any royalty statements before the GPL 2H 2018 Statement, and there are no corresponding communications from the relevant three-year limitations period that could be construed as raising a "specific" objection to the royalty amount. However, because a reasonable jury could find that the August 2019 email was a specific written objection to the GPL 1H 2018 Statement as well, the Court does not dismiss Plaintiff's claim, at this time, to the extent it is based on the GPL 1H 2018 Statement.[3]

### C. Effect of English Law on Limitations Period for Plaintiff's Composition Registration Claim

Defendants argue that, because English law applies to the 2007 Songwriter Agreement, Plaintiff's claim based on section 23 of the 2007 Songwriter Agreement—which relates to the registration of compositions—is also time-barred. Mem. at 11–12. Plaintiff disagrees, urging this Court to apply the "discovery rule" which refers to the practice of tolling the limitations period where fraud delays the plaintiff's discovery of material that's relevant to their claim. Opp. at 15.

---

[3] Consistent with the Court's 2024 SMJ Order as to the 2007 Recording Agreement regarding the same issue, *see* 2024 SMJ Order at 15–16, Defendants may still argue, with respect to any alleged written objection, that the balance carried forward amount of a particular royalty statement is derived from an earlier statement that Plaintiff did not object to. To the extent that can be shown, Plaintiff will be bound by the earlier, unobjected to royalty statement, and will be deemed unable to challenge the royalty amount of the subsequent statement. For instance, if it is determined that Plaintiff did not submit a specific written objection to the GPL 1H 2018 Statement, she would be prevented from challenging the balance on the GPL 2H 2018 Statement.

In seeking application of the discovery rule, the Court understands Plaintiff to be making two arguments. First, she argues that Defendants concealed two licensing contracts—the "Roots" and "Wrong Address" licensing contracts—which she claims prevented her "from knowing that her copyrights were being exploited without her consent." *Id. at* 10, 17–19. According to Plaintiff, she had no reason to believe her copyrights were being misused, and had she been aware of these licensing agreements, she would have taken earlier legal action to challenge the unlawful use of her works. *Id.* at 18–19. Second, she contends that certain copyright certificates disclosed during discovery show that GPL did not properly register composition rights with respect to certain albums. *Id.* at 15. The Court addresses each of these in turn, and grants summary judgment to Defendants on this issue of timeliness with respect to Plaintiff's claims under section 23 of the 2007 SWA.

As previously determined, English law substantively governs the 2007 SWA. The Court thus considers a similar provision under English law: Section 32 of the Limitation Act. Section 32 provides "that in instances where a cause of action is based upon fraud, concealment of relevant facts or mistake, the period of limitation shall not begin to run until the claimant has discovered (or could with reasonable diligence have discovered) the fraud, concealment or mistake." ECF No. 273 at ¶ 15; Limitation Act 1980, c. 58, § 32(1). However, this rule only applies where the discovered fact is *relevant to plaintiff's right of action*. Limitation Act 1980, c. 58, § 32(1)(b) (emphasis added).

Here, Plaintiff's arguments concerning the allegedly improper licensing of her songs "Roots" and "Wrong Address" are not "relevant" to her claim under section 23 of the 2007 SWA, which concerns composition registration. Plaintiff claims she did not know of, and had no way to discover, these licensing agreements, and therefore did not know of the misuse of her copyrights.

But this, at most, relates to Plaintiff's (now dismissed) copyright infringement claims. Indeed, in her response to Defendants' statement of facts, Plaintiff makes this clear by explaining the discovery rule applies where "fraud or concealment prevented the plaintiff from *discovering the infringement*." Opp. at 18 (emphasis added). In short, by Plaintiff's own admission, her reference to the "Roots" and "Wrong Address" contracts has no clear relationship to her section 23 composition registration claim. Accordingly, she provides no reason why this Court should not find the claim time-barred to the extent it relies on conduct outside of the six-year limitations period.

Next, Plaintiff argues that certain copyright certificates obtained through the course discovery show improper registration. This argument, on the other hand, does indeed relate to her section 23 2007 SWA claim. However, tolling is not appropriate under Section 32 of the Limitation Act for at least two reasons. For one, copyright registrations are public, and because Plaintiff could have discovered these copyright certifications with reasonable diligence, there is no applicable fraudulent concealment. For another, a recent U.K. Supreme Court suggests Section 32's "tolling" requires a degree of deliberate action by the alleged concealer that the Court cannot find exists on the available record.

In *Canada Square Operations Ltd v. Potter*, [2024] E.C.C. 1, the UK Supreme Court considered whether recklessness or deliberateness was required for Section 32 to apply. At issue in *Canada Square* was a credit agreement between a commercial lender (the eventual defendant) and a consumer (the eventual plaintiff), which required that the consumer pay a premium for Payment Protection Insurance (PPI). *Canada Square*, [2024] E.C.C. at 7. The lender served as an intermediary between the consumer and PPI provider, but the lender failed to disclose that they received 95% of the premium payments. *Id.* at 7–8.  The U.K. Supreme Court found that, while

the lender concealed the truth about the premium, this did not toll the limitations period, because even though the lender's "failure to disclose the commission gave rise to the respondent's right of action, and could therefore be regarded as a breach of duty for the purposes of [Section 32 of the Limitation Act], it could not be shown that the appellant *had known that it was committing a breach of duty or intended to do so*." *Id.* at 10 (emphasis added).

Here, Plaintiff similarly has not adduced any evidence to create a genuine issue of fact on this question. There is nothing in the record to suggest or indicate (1) that Defendants had any duty to affirmatively disclose these certificates to Plaintiff before this litigation commenced; or (2) that Defendants' failure to disclose them was intentional or deliberate. Indeed, as previously stated, copyright registrations are public, and it appears that Plaintiff even signed the "Roots" agreement (though she alleges this was a false signature). Opp. at 17; ECF No. 271 at 9 n.9.

Accordingly, the Court does not find any basis for tolling the six-year limitations period, and Plaintiff's second cause of action with respect to section 23 of the 2007 Songwriter Agreement is dismissed as time-barred to the extent it relates to any conduct occurring on or before January 7, 2016.

## II.    Plaintiff's Motion for Sanctions Is Denied

The Court denies Plaintiff's motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. The basis for Plaintiff's motion appears to be her belief that Defendants' renewed summary judgment motion was merely filed for the improper purpose of causing delay and an abuse of the litigation process. ECF No. 258 at 10–12. But as already explained, the renewed motion was expressly and appropriately permitted by this Court. *See, e.g., Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012) (observing that district courts may in their discretion permit renewed or successive motions for summary judgment).

Plaintiff also alleges that Defendants used an unofficial version of a deposition transcript and "selectively" redacted portions of expert deposition testimony. *Id.* at 7–10. It is not improper for counsel to excerpt deposition testimony submitted in connection with a motion, using only the portions that are relevant, and to use unofficial versions pending receipt of the official transcript. Plaintiff also has not come forward with anything to suggest that counsel acted in bad faith with respect to either action. The sanctions motion is therefore denied.

### III.    Plaintiff's Motion for Disqualification Is Denied

The Court also denies Plaintiff's motion to disqualify Fox Rothschild LLP as counsel for Defendants for alleged violations of Rule 1.7, 3.3[4] and 8.4 of the New York Rules of Professional Conduct (the "NYRPCs," and each an "NYRPC") and under Rules 11(b) and 26(a)(1)(A) of the Federal Rules of Civil Procedure. ECF No. 270 at 1.

Plaintiff observes that Fox Rothschild (who represent Defendants in this action), Alex Threadgold (a representative for VP Records) and Jessica Weiner (a GPL executive who discussed royalties with Plaintiff and Andre Morris), are defendants in an unrelated case pending in the Eastern District of New York, *McGregor v. VP Records, et al.,* No. 24-cv-1520 ("*McGregor*"). *Id.* at 2–3. *McGregor* involves assertions of fraud and a misuse of settlement agreements by the defendants, and Plaintiff argues the overlap of claims, parties, and evidence with *McGregor* creates an "undeniable conflict of interest" and that it is "fundamentally unethical and prejudicial for a law firm acting as a defendant in one matter to represent codefendants in another matter involving the same compositions and intertwined legal disputes."

---

[4] Plaintiff raises this assertion for the first time in reply, but the Court has discretion to consider it, and will do so here.

ECF No. 270 at 3. Plaintiff also argues that Defendants' failure to disclose the *McGregor* case as a related action is further proof of unethical behavior. *Id.*

None of the aforementioned facts warrant disqualification. "Generally, disqualification motions are disfavored, as they are often interposed for tactical reasons, and [] even when made in the best of faith, such motions inevitably cause delay." *Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 281 (S.D.N.Y. 2011) (internal citation and quotation marks omitted). Therefore, motions for disqualification are subjected to a high standard of proof, and "in deciding disqualification motions, a court balances a client's right freely to choose [their] counsel against the need to maintain the highest standards of the profession." *Pagan v. C.I. Lobster Corp.*, 549 F. Supp. 3d 356, 359 (S.D.N.Y. 2021) (internal citation and quotation marks omitted).

Plaintiff has not provided any specific assertions to support a finding of a Rule 1.7, 3.3, or 8.4 violation. NYRPC 1.7 provides that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." N.Y. R. PROF. CONDUCT 1.7(a)(1). Plaintiff does not cite to, and the Court is not aware of, any cases, canons, or interpretations finding that that a law firm who is named along another party as a defendant is necessarily and categorically prevented from representing that defendant in another, unrelated case. That is particularly true where, like here, the parties' interests appear to fully align in both cases. Plaintiff also appears to indirectly claim a violation of NYRPC 3.7 based on Defendants' attorney, Mr. Paul N. Bowles's, prior affiliation with VP, but the Court has already rejected any impropriety on this point. *See* ECF No. 234.

Further, NYRPCs 3.3 and 8.4, as is relevant to Plaintiff's application, forbids a lawyer from engaging in "dishonesty, fraud, deceit, or misrepresentation," N.Y. R. PROF. CONDUCT 8.4(c), and from making false statements or failing to disclose "controlling legal authority." N.Y.

R. PROF. CONDUCT 3.3(a)(2). To the extent Plaintiff takes issue with Defendants' failure to disclose the *McGregor* action, this alleged failure will not suffice: the actions are not "related" in the appropriate sense, because they involve different claims between different parties. Accordingly, that lack of disclosure has not prevented this Court's from evaluating the "full scope" of Plaintiff's claims. ECF No. 270 at 3.

Indeed, *even if* the Court were to somehow find a rule violation, Plaintiff's requested remedy would not be warranted. As this Circuit has recognized, a finding of a violation does not automatically or necessarily require disqualification, and forcing Defendants to now retain new counsel shortly before trial would be highly prejudicial. *See, e.g., Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (observing that not every violation of a disciplinary rule will necessarily lead to disqualification). The Court will therefore not disqualify Fox Rothschild from this litigation, as it sees no risk of a taint to the litigation and forthcoming trial. *Id.; see Imhof v. N.Y.C. Hous. Auth.*, No. 23-CV-1880 (JPC) (JW), 2025 WL 315824, at *4 (S.D.N.Y. Jan. 28, 2025) (observing that "a court will only disqualify an attorney on the basis of a conflict of interest when it 'undermines the court's confidence in the attorney's representation of' their client", and denying disqualification motion as to NYRPC 1.7 which was only supported by "conclusory" allegations).

## IV.  Plaintiff's Motion for Declaratory Judgment Is Denied

Finally, the Court denies Plaintiff's motion for "declaratory judgment" and a permanent injunction. This can be denied summarily: for one, the Federal Rules do not provide for, and the Court is not aware of, a motion for declaratory judgment. Rather, a party *brings an action* seeking declaratory relief, which they will obtain upon prevailing on the merits. *See, e.g., Amaar Holding Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 22-CV-5332 (SJB), 2025 WL 251418, at *8

(E.D.N.Y. Jan. 17, 2025) ("Because an action for a declaratory judgment is an ordinary civil action, a party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment."). The same is true for a permanent injunction: a party must first demonstrate actual success on the merits—as opposed to the likelihood of success on the merits that is required for a preliminary injunction. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). Moreover, the party seeking a permanent injunction would need to show "the absence of an adequate remedy at law and irreparable harm if the relief is not granted," a showing which Plaintiff has not made. *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989). The motion is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is GRANTED in part and DENIED in part, and Plaintiff's motions for sanctions, disqualification, and declaratory relief are DENIED. The parties will be referred to Magistrate Judge Ricardo for settlement purposes by separate order. The Clerk of Court is respectfully directed to terminate ECF Nos. 255, 257, 259, and 270.

Dated:  May 16, 2025
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge